**Michael MORALES, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

Nos. 1044, Docket 96–2872.

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1998.

Decided May 4, 1998.

Alexander H. Schwartz, Bridgeport, CT, for Petitioner–Appellant.

Joseph W. Martini, Assistant United States Attorney, Bridgeport, CT (John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT, on the brief), for Respondent–Appellee.

Before: VAN GRAAFEILAND, JACOBS and LAY,* Circuit Judges.

PER CURIAM:

Michael Morales appeals from an order of the United States District Court for the District of Connecticut (Cabranes, *J.*, sitting by designation [1]), denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion, filed a year after Morales pled guilty to narcotics and tax charges, contends that he was denied the effective assistance of counsel because his lawyer neither filed a timely notice of appeal on his behalf nor advised him of his right to do so. The district court applied the test for ineffective assistance set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and denied the motion on the ground that Morales failed to demonstrate that he was prejudiced by his lawyer's default.

On appeal, Morales contends that the district court erred by applying the *Strickland* test instead of ruling that the lawyer's failure to advise Morales of his right to appeal after sentencing constituted a constructive denial of counsel and therefore was prejudicial *per se.* We write solely to address that argument, and we hold that a *per se* rule of prejudice is inappropriate under these circumstances.

---

* The Honorable Donald P. Lay, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Judge Cabranes had sentenced the petitioner during his tenure as a district court judge.

Morales also argues that he should prevail even if the *Strickland* test is applied, and as to that argument we conclude, for substantially the reasons stated by the district court, that Morales has not satisfied *Strickland.*

Accordingly, we affirm.

## BACKGROUND

Morales was the leader of a drug distribution ring in Bridgeport, Connecticut that was the subject of a long-term undercover investigation. He was arrested on December 14, 1992. On the same day, officers executed a search warrant at the home of Roberto Reyes, one of Morales's co-defendants. In one apartment of that house, they found crack cocaine, crack vials, and cutting materials; in another room, they found two firearms and ammunition.

Morales retained Edward J. Gavin to represent him. After a series of meetings between client and counsel, they decided that it was best for Morales to enter into a plea agreement. On June 3, 1993, Morales pled guilty to (i) conspiracy to possess with intent to distribute and conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (ii) making a false statement on his 1991 tax return in violation of 26 U.S.C. § 7206(1). The written plea agreement expressly reserved the parties' "respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by statute."

During the period between the entry of his guilty plea and his sentencing hearing, Morales met with his lawyer several times to review the Presentence Investigation Report ("PSR") and to discuss strategy. Gavin's primary objection to the PSR arose from the two-level enhancement for possession of a firearm.[2] He told Morales that he believed the government had failed to draw an adequate connection between Morales and the guns found in the home of his co-defendant

Reyes, and he prepared a sentencing memorandum to that effect.

As Morales concedes, Gavin explained what was likely to happen at the sentencing hearing. He told Morales that he had a right to appeal and that the sentencing judge would advise him accordingly. More specifically, Gavin advised Morales that if the judge overruled his objection to the firearm enhancement, Morales could appeal that decision.

The sentencing hearing took place on September 27, 1993, before Judge Cabranes in the United States District Court for the District of Connecticut. The court overruled the defendant's objection to the two-level enhancement, and imposed a sentence of 108 months on the drug conspiracy count and a concurrent sentence of 36 months on the false tax statement count. After pronouncing sentence, Judge Cabranes advised the defendant of his right to appeal, and what steps would be necessary to perfect it:

Let me inform you, Mr. Morales, that under some circumstances you or the Government may have the right to appeal the sentence that I've imposed. If you cannot afford to pay for the costs of an appeal, you may appeal as a poor person, in which case the Government will pay for all the costs of your appeal, and I would appoint an attorney, probably your current attorney.... Even if you couldn't afford it, I would appoint your current counsel, if necessary, and the Government would pay his fees and costs.

Now, under our rules, you have ten days from the entry of judgment in this case in which to file a notice of appeal. A notice of appeal is a document that says that you're going to file an appeal.... If you do not file a notice of appeal within ten days of the date [on] which I enter the judgment, then you may lose your right to appeal. Do you understand that?
Defendant: Yes.

---

**2.** The PSR calculated the sentencing range as follows. To a base offense level of 26, four levels were added pursuant to U.S.S.G. § 3B1.1(a) because Morales had admitted to a leadership role in the conspiracy; two levels were added pursuant to U.S.S.G. § 2D1.1(b)(1) because of his possession of a firearm in connection with the offense; and three levels were subtracted for his acceptance of responsibility. Morales thus was accorded an offense level of 29. His prior record put him in criminal history category III. The intersection of his criminal history category and his offense level yielded a sentencing range of 108 to 135 months' imprisonment.

Morales was taken into custody immediately after sentencing. He failed to file a notice of appeal within ten days, as required by Fed. R.App. P. 4(b).

Nearly a year later, in August 1994, Morales filed *pro se* the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He claimed that his lawyer's failure to advise him of his right to appeal after sentencing deprived him of the effective assistance of counsel. The district court issued an order to show cause, directing the government to respond.

At an evidentiary hearing on June 17, 1996, Gavin was the only witness. He testified that prior to the sentencing hearing, he met with Morales, discussed Morales's right to appeal, and expressed his opinion that an appeal would be futile even if the judge overruled the defendant's objection to the two-level gun possession enhancement. Since Gavin had already advised that an appeal would be futile if the judge were to do at the hearing what the judge in fact did, Gavin expected that if Morales wanted to appeal he would communicate that desire to him after sentencing. Gavin also testified that immediately after sentencing he had discussed the issue of a potential appeal with Morales's father, whom Gavin had met several times previously.

The district court denied Morales's motion on August 9, 1996, and Morales takes this appeal.

## DISCUSSION

■ In evaluating the district court's denial of relief under 28 U.S.C. § 2255, we review its findings of fact for clear error and we review its conclusions of law *de novo.* *See Manko v. United States,* 87 F.3d 50, 52 (2d Cir.1996); *Scanio v. United States,* 37 F.3d 858, 859 (2d Cir.1994). It is well established that section 2255 is not intended to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). A defendant's claim that he was denied the effective assis-

tance of counsel ordinarily is evaluated under the demanding standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* requires the defendant to show that he was prejudiced by his lawyer's errors. Specifically, he must show (i) that counsel's performance "fell below an objective standard of reasonableness" and (ii) a reasonable probability that but for counsel's errors, the outcome would have been different. *Id.* at 688, 694, 104 S.Ct. at 2064, 2068.

The *Strickland* Court noted, however, that there are some errors that will support a presumption of prejudice because it will be "so likely that case-by-case inquiry into prejudice is not worth the cost," because such errors are "easy to identify," and because such errors are "easy for the government to prevent." *Id.* at 692, 104 S.Ct. at 2067; *see also Tippins v. Walker,* 77 F.3d 682, 686 (2d Cir.1996) (discussing *Strickland* ).[3] The Court offered examples of such errors, including the actual or constructive denial of counsel, and "various kinds of state interference with counsel's assistance." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

■ Morales contends that prejudice should be presumed where a defendant's lawyer fails to approach the defendant after sentencing to advise him concerning the right to appeal. However, Morales's claim does not support a presumption of prejudice under *Strickland.* A lawyer's failure to advise his client of the right to appeal after sentencing will not be prejudicial so often "that case-by-case inquiry into prejudice is not worth the cost." *See id.* at 692, 104 S.Ct. at 2067. Prejudice may depend on whether defendant's counsel so advised him prior to sentencing (as Gavin testified he did), or whether the court gave him notice of his appellate rights (as it should, and did here), or whether the defendant had sufficient experience with the criminal justice system to know of his right to appeal without being told—not to mention the variable merits and prospects of an appeal, especially one from a sentence imposed following a plea.

---

**3.** The *Strickland* Court also held that prejudice will be presumed where counsel has an actual conflict of interest. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

Moreover, counsel's failure to approach his client after sentencing to discuss an appeal is not an "impairment[ ] of the Sixth Amendment right that [is] easy to identify," nor is it a failure or omission for which "the prosecution is directly responsible," or one that is "easy for the government to prevent." *See id.* The consultation concerning appeal is ordinarily not conducted in open court or in the presence of the prosecution. And to the extent Morales can claim any impairment of a Sixth Amendment right, the fault cannot be laid at the door of the government.

Several panels of the Ninth Circuit have held that a lawyer's failure to file an appeal on behalf of a criminal defendant is presumptively prejudicial unless the defendant has explicitly consented to forgo the appeal. *See United States v. Stearns,* 68 F.3d 328, 330 (9th Cir.1995); *United States v. Horodner,* 993 F.2d 191, 195 (9th Cir.1993). On the other side, the Seventh Circuit ruled in *Castellanos v. United States,* 26 F.3d 717 (7th Cir.1994), that while ignoring a client's request to file an appeal is ineffective assistance without regard to the probability of the appeal's success,

> "[r]equest" is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue. Moreover, ... the Constitution does not require a lawyer to advise the client of the right to appeal. That duty rests principally on the judge—and even if both judge and counsel forget to provide this advice, most defendants know about the possibility of appeal and cannot complain if they are not furnished redundant information.

*Id.* at 719. For reasons already stated, we think that the Seventh Circuit has the better of the argument.

Morales presses an analogy between his case and *Tippins v. Walker,* 77 F.3d 682 (2d Cir.1996), in which we held that when defense counsel is asleep during portions of the trial that bear on his client's case, his inattention is *per se* prejudicial because "unconscious or sleeping counsel is equivalent to no

counsel at all." *Id.* at 686 (citation and internal quotation marks omitted). We reject the proffered analogy.

We warned in *Tippins* that "[w]e are reluctant to extend a rule of *per se* prejudice in any new direction," and that this Circuit has only extended it "[w]ithout enthusiasm" to cases where the individual appearing as defense counsel was not a member of the bar, or where the lawyer had a conflict of interest arising from his own participation in the defendant's crime. *Id.* (internal quotation marks omitted). We were induced to find prejudice *per se* in *Tippins* for reasons that are not applicable here. *Tippins's* lawyer had slept for significant portions of each day of a twelve-day trial, *id.* at 687, a dereliction that is so likely to be prejudicial that case-by-case inquiry is unnecessary. *See Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. A lawyer asleep in open court has abandoned his client in front of the judge and the prosecutor; his ineffectiveness and helplessness are therefore both "easy to identify" and "easy for the government to prevent." *Id.*[4] Moreover, we were concerned in *Tippins* that the usual *Strickland* review could not be conducted: "if counsel sleeps, the ordinary analytical tools for identifying prejudice are unavailable. The errors and lost opportunities may not be visible in the record, and the reviewing court applying the traditional *Strickland* analysis may be forced to engage in unguided speculation." *Tippins,* 77 F.3d at 686 (citations and internal quotation marks omitted).

In Morales's case, as the district court's opinion demonstrates, *Strickland* analysis offers an adequate means for assessing the impact of counsel's failure to file an appeal or to advise the defendant, post-sentencing, of his appellate rights. A reviewing court is able to gauge both whether the lawyer's conduct was objectively unreasonable and whether an appeal would have had a reasonable likelihood of success. The district court did that, and we affirm its ruling for substantially the same reasons.

---

4. Indeed, the judge halted Tippins's trial on at least one occasion and called all of the attorneys out into the hallway in order to rouse the atten-

tion of the defendant's lawyer. *Tippins,* 77 F.3d at 687.

The judgment of the district court is affirmed.