**Simon B. THEN, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. Civ.A. 98–5523AJL.**

United States District Court, D. New Jersey.

June 22, 1999.

---

Simon B. Then, Newton, NJ, pro se.

Faith Hochberg, United States Attorney, Dan Gibbons, Asst. United States Attorney, Newark, NJ, for United States.

Andreas Quarantino, District Director of the United States Immigration and Naturalization Service, Newark, NJ, for respondent.

## OPINION

LECHNER, District Judge.

This is an action brought by *pro se* petitioner, Simon B. Then ("Then"), a detainee at the Detention Center of the Immigration and Naturalization Service (the "INS"), in Newton, New Jersey, against respondent, the INS.[1] Presently pending is the petition (the "Petition") of Then for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). Then specifically seeks relief from a final order of deportation (the "Final Order of Deportation").[2]

---

**1.** Then originally filed an application for a preliminary injunction (the "Preliminary Injunction Application") together with the Petition on 8 December 1998. The Preliminary Injunction Application was denied by order and opinion, dated 14 December 1998. *See*

*Then v. INS,* 37 F.Supp.2d 346 (D.N.J.1998) ("*Then I* ").

**2.** In support of the Petition, Then submitted: the Petition and the Affirmation of Facts (the "Then Aff."), attaching exhibits. In opposi-

For the reasons set forth below, the Petition is dismissed with prejudice.

*Background*

A. *Facts*

Then is a native and citizen of the Dominican Republic. *See* Petition at ¶ 5. He entered the United States in 1983. *See id.* at ¶ 7.

In October 1993, a State grand jury indicted Then in a four-count indictment (the "Indictment"). The first two counts of the Indictment charged Then with possession of a controlled dangerous substance with intent to distribute, in violation of N.J.S.A. 2C:35-10a(1), 2C:35-5a(1) and 2C:35-5b(3). *See* Judgment of Conviction and Order of Commitment (the "Judgment and Order"). Count three ("Count Three") of the Indictment charged Then with possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7 and 2C:35-5a. *See id.* The fourth count charged Then with violating N.J.S.A. 2C:28-4a for writing false reports. *See id.*

On 15 March 1995, Then pleaded guilty to Count Three of the Indictment (the "Guilty Plea"). *See* Then Aff. at ¶ 4. A judgment of conviction (the "Judgment of Conviction") was issued by the New Jersey Superior Court, Law Division, Passaic County (the "Superior Court") on 30 June 1995. *See* Judgment and Order. Then was sentenced to a minimum prison term of fourteen months. *See* Then Aff. at ¶ 5; Judgment and Order.

The Guilty Plea rendered Then deportable pursuant to Section 241(a)(2)(B)(i) ("Section 241") of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1227(a)(2)(B)(i) (formerly 8 U.S.C. § 1251).[3] Consequently, upon his completion of the fourteen month prison term, Then was placed by the INS in deportation proceedings. *See* Then Aff. at ¶ 3. Deportation proceedings were commenced on or about 12 August 1996 when the Government issued a Notice of Hearing and an Order to Show Cause requiring Then to show cause why he should not be deported.[4] *See* Amended Answer at 1. After appearing without counsel before immigration judge John A. Duck, Jr. (the "Immigration Judge") on 29 October 1996, *see* Then Aff. at ¶ 6; Amended Answer at 2, Then was permitted to hire an attorney and was released upon posting bond. *See id.* at ¶ 7. Then thereafter consented to having his new attorney, Jose W. Vega, Esq. ("Vega") conduct the subsequent deportation proceedings and appear on his

---

tion to the Petition, the Government filed an answer (the "Answer"), an amended answer (the "Amended Answer") and a certification of Lisa M. Golub, Esq. (the "Golub Certification").

3. Section 241 provides, in pertinent part:

(a) *Classes of deportable aliens*
 Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
 (2) *Criminal Offenses*
 (B) *Controlled Substances*
 (i) *Conviction*
 Any alien who at any time after admission has been convicted of a violation of (or conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . ., other than a single offense in-

volving possession for one's own use of 30 grams or less of marijuana, is deportable. 8 U.S.C. § 1227(a)(2)(B)(i).

4. The Order to Show Cause, attached to the Golub Certification as Exhibit C, stated, *inter alia:*

(1) [Then] [is] not a citizen or national of the United States; (2) [Then] is a native of Dominican Republic and a citizen of Dominican Republic; (3) [Then] entered the United States at or near San Ysidro, California on or about March 8, 1984; (4) At that time [Then] entered as an immigrant; (5) [Then] [was], on May 26, 1995 convicted in the New Jersey Superior Court, Passaic County for the offense of possession of controlled dangerous substance (cocaine and heroin) with the intent to distribute within 1,000 feet of school property in violation of N.J.S. 2C:35-7 and 2C:35-5a.
*See* Order to Show Cause at 1.

behalf. *See* Then Aff. at ¶ 7; Amended Answer at 2.

On 7 March 1997, a deportation hearing (the "7 March 1997 Deportation Hearing") was held before the Immigration Judge. According to the Government, at that time, Vega, on behalf of Then, requested a waiver of deportation (the "212(c) Application"), pursuant to Section 212(c) ("Section 212(c)") of the INA, 8 U.S.C. § 1182(c).[5] *See* 7 March 1997 Deportation Hearing Transcript (the "Deportation Hearing Tr.") at 5:6–10.[6]

In an oral decision, dated 7 March 1997, (the "7 March 1997 Decision"), the Immigration Judge refused to grant the 212(c) Application. In so doing, the Immigration Judge stated:

> [Then] has asked to apply, through counsel, for a 212(c) waiver. However, I note that the respondent [Then] has been convicted for the crime of possession of cocaine and heroine with intent to distribute within 1,000 feet of a school. I find, therefore, that that [sic] crime is an aggravated felon [sic], making him ineligible for that 212(c) waiver sought by the respondent. There is not

[sic] other relief sought nor is there any known by the government or this Court. . . . Therefore, it is the order of the Court that the respondent be deported from the United States to the Dominican Republic. . . .

7 March 1997 Decision at 1–2.

It appears the Immigration Judge, in refusing to grant the 212(c) Application, placed reliance upon Section 241(a)(2)(B)(i) of the INA. *See* 8 U.S.C. § 1227(a)(2)(B)(i); *see also supra* n. 3. It further appears the Immigration Judge took into account § 440(d) ("Section 440(d)") of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, tit. I, § 105(2), 110 Stat. 1214 (24 April 1996) (the "AEDPA"). Section 440(d) added the following language to Section 212(c):

> [Section 212(c)] shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in Section 241(a)(2)(A)(iii) [aggravated felony], *(B) [controlled substance offenses],* (C) [firearms offenses], or (D) [offenses against national security]. . . . AEDPA § 440(d), 110 Stat. 1214, 1217 (emphasis added).[7] Based

---

**5.** As discussed in *Then I,* before recent amendments to Section 212(c) and its eventual repeal, Section 212(c) authorized the Attorney General to waive deportation or exclusion for aliens subject to final orders of deportation or exclusion who have had "lawful unrelinquished domicile" for seven consecutive years. Section 212(c) provided, in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . .

8 U.S.C. § 1182(c) (1994 ed.).

While Section 212(c) appeared on its face to apply only to aliens who seek to re-enter the country, it has been extended to apply to deportation proceedings as well. *See Catney v. INS,* 178 F.3d 190, 192–93, (3d Cir.1999); *Morel v. INS,* 90 F.3d 833, 837 (3d Cir.) (*"Morel I "*), vacated on other grounds, 144 F.3d 248 (3d Cir.1998); *Katsis v. INS,* 997 F.2d 1067, 1070 (3d Cir.), *cert. denied,* 510

U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *Francis v. INS,* 532 F.2d 268, 273 (2d Cir.1976); *Matter of Silva,* Int. Dec. 2532 (BIA 1976) (adopting *Francis* nationwide). Then entered the United States in 1983; it appears he has obtained more than seven years of lawful domicile. *See* Petition at ¶ 7.

**6.** A copy of the 7 May 1997 Deportation Hearing Transcript is attached to the Golub Certification as Exhibit D.

**7.** Section 440 of the AEDPA was amended by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, Div. C., § 309(c), 110 Stat. 3009, 626–27 (30 September 1996). The IIRIRA repealed Section 212(c), 8 U.S.C. § 1182(c). The repeal of Section 212(c), as previously amended by Section 440(d), does not affect cases commenced before the effective date of the IIRIRA (1 April 1997), in which a final order of deportation was filed after its enactment date (30 October 1996). *See Catney,* 178 F.3d at 192–93; *see also Hall v. INS,* 167 F.3d 852, 855 n. 3 (4th Cir.1999).

upon the Judgment of Conviction of Then which, as stated, fell under Section 241(a)(2)(B)(i), the Immigration Judge found Then statutorily ineligible for a waiver under Section 212(c).

Also during the 7 March 1997 Deportation Hearing, Vega, on behalf of Then, admitted the five allegations contained in the Order to Show Cause and conceded Then's deportability. *See* Deportation Hearing Tr. at 3–4; Amended Answer at 2.

Vega appealed the 7 March 1997 Decision to the Board of Immigration Appeals (the "BIA") on 10 April 1997 (the "Appeal"). *See* Then Aff. at ¶ 10. In support of the Appeal, Vega, on behalf of Then, argued:

> The Respondent [Then] should be eligible for a 212(c) waiver. He was convicted prior to the enactment of the Antiterrorism and Effective Death Penalty Act. This Act should not be applied retroactively. Furthermore, the Respondent is being denied equal protection of the laws by not being allowed an opportunity to apply for a 212(c) waiver because if he was in exclusion proceedings he would be eligible for this waiver. *See Matter of Silva,* 16 I & N Dec 26 (BIA 1996)[sic].

*See* Appeal.

By order, dated 28 January 1998, (the "28 January 1998 Order"), the BIA deemed the Appeal untimely because it was not filed within thirty calendar days of the 7 March 1997 Decision. *See* 28 January 1998 Order. The BIA stated: "The Immigration Judge's decision is accordingly now final[.]" *Id.; See* Then Aff. at ¶ 10.

Following the denial of the Appeal by the BIA, Vega indicated to Then's family, via facsimile transmittal (the "Vega Facsimile"), that even if timely filed, the Appeal would have been denied because the AEDPA is applied retroactively to all cases by the BIA. *See* Then Aff. at ¶ 11; Vega Facsimile attached thereto.

In support of the instant Petition, Then alleges (1) his constitutional right to due process was violated when the Immigration Judge retroactively applied AEDPA Section 440(d) to bar his 212(c) Application, *see* Petition at ¶¶ 2, 3, 16–17, and (2) he was denied effective assistance of counsel. Then specifically alleges Vega waived his rights to a fair hearing before the Immigration Judge by admitting all the charges lodged against him by the INS without his permission. *See id.* at ¶ 3; Then Aff. at ¶ 8. He further alleges Vega, despite knowing an appeal not filed by 7 April 1997 would be deemed untimely, nevertheless filed the Appeal on 10 April 1997. *See* Then Aff. at ¶ 10. Then alleges the Appeal

> d[id] not examine the legal consequences derived from the [Immigration Judge's] retroactive application of the [AEDPA] enacted by April 24, 1996.... I was placed in deportation proceedings for a drug-possessory crime committed on October 26, 1993, at least 2 years before the creation of the aforesaid statutes by Congress.

Petition at ¶ 2.

### B. *Procedural History and Intervening Law*

As noted, Then originally filed the Preliminary Injunction Application seeking to enjoin the INS from deporting him and

---

In such cases, transitional rules of the IIRIRA apply. The transitional rules of the IIRIRA "differ[ ] only trivially from that of AEDPA § 440(d) ...." *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997); *see Catney,* 178 F.3d 190, 192–93; *Hall,* 167 F.3d at 855 n. 3; *Turkhan v. INS,* 123 F.3d 487, 490 (7th Cir.1997); *Matter of Fuentes–Campos,* Int. Dec. 3318, 1997 WL 269368 (BIA 14 May 1997).

The Immigration Judge issued the Final Order of Deportation on 7 March 1997. Con-

sequently, the transitional rules of the IIRIRA govern the instant action. *See Catney,* 178 F.3d 190, 192–93. Because the restructuring language of the IIRIRA does not affect the outcome of this case, for purposes of this opinion, Section 440(d) of the AEDPA is deemed to include the technical amendments of the IIRIRA.

seeking to obtain release from his present incarceration at the Detention Center pending "a full and fair hearing on the merits of the 212(c) case." *See* Petition at Prayer for Relief ¶ 3.

The Preliminary Injunction Application was denied by order and opinion, dated 14 December 1998. *See Then I*, 37 F.Supp.2d at 362. *Then I* also directed the Government to file an answer by 15 January 1999. *See id.* In compliance with *Then I*, the Government filed the Answer to the Petition on 11 January 1999. *See* Answer. The Answer alleged, *inter alia*, Congress removed jurisdiction from the district courts to review immigration decisions with the exception of "core constitutional issues protected by the Suspension Clause [8] of the Constitution." [9] Answer at 4. The Answer additionally alleged Vega's

admission of the five allegations against Then at the 7 March 1997 Deportation Hearing did not prejudice Then because the allegations were, in fact, accurate. *See* Answer at 7–8. The Government further alleged the untimely Appeal did not prejudice Then because the Immigration Judge correctly denied the 212(c) Application. *See id.* at 11.

Then filed a reply to the Answer on 25 January 1999 (the "Reply Brief"). In the Reply Brief, Then argued that habeas jurisdiction survived the enactment of AEDPA Section 440(a). *See* Reply Brief at ¶ 2. With regard to his claim of ineffective assistance of counsel, Then specifically alleged Vega was "legally ineffective" because he failed to "develop any Pre–AEDPA or Pre–IIRIRA defense or legal basis, . . . file a brief in support of the appeal . . .

---

8. The Suspension Clause states: "[T]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1, § 9, cl. 2.

9. The Answer relied on *Morel v. I.N.S.*, 144 F.3d 248 (3d Cir.1998) (*"Morel II"*). In *Morel II*, the Third Circuit held Section 440(a) ("Section 440(a)") of the AEDPA divested it of jurisdiction to review the direct appeal by an alien of a BIA decision which affirmed a final order of deportation. 144 F.3d at 250. Section 440(a) of the AEDPA, codified at 8 U.S.C. § 1105a(a) (10), provides for judicial review of all final orders of deportation. Section 440(a) amends § 106(a) of the INA ("Section 106(a)"), as amended, 8 U.S.C. § 1105a(a)(10), by removing judicial review of final orders of deportation for aliens convicted of certain criminal offenses. Section 106(a) formerly read: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105(a)(10); *see Morel II*, 144 F.3d at 251 n. 4.

The AEDPA § 440(a) supplants Section 106(a) as follows:

Any final order of deportation against an alien who is *deportable by reason of having committed a criminal offense* covered in section [1227](a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section [1227](a)(2)(A)(ii) of this title for which both predicate offenses are covered by section [1227](a)(2)(A)(i) of this title, *shall not be subject to review by any court.*

AEDPA § 440(a), 110 Stat. at 1276–77 (codified at 8 U.S.C. § 1105a(a)(10)) (emphasis added).

The IIRIRA ultimately repealed Section 106 of the INA, 8 U.S.C. § 1105a (1994), replacing it with a more restrictive statute governing judicial review. *See* 8 U.S.C. § 1252(g). As noted, however, the changes effected by the IIRIRA do not apply to the instant action. The transitional rules of the IIRIRA, applicable here, carry forward the jurisdictional bar of deportation orders against aliens convicted of certain crimes, including controlled substance violations for which the Petitioner was convicted. *See* IIRIRA § 309(c)(4)(G), 110 Stat. 3009–546 (setting forth transitional rules which provide, *inter alia*, "there shall be no appeal of any discretionary decision under . . . [S]ection 212(c)" and "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in . . . [S]ection 241(a)(2)(A)(iii), (B), (C), or (D) . . . ."); *see also Berehe v. INS*, 114 F.3d 159, 161 (10th Cir.1997); *Jorge v. Hart*, No. 97–CV–1119, 1997 WL 531309, at *3 (S.D.N.Y. 28 Aug.1997).

The *Morel II* court declined to address whether Section 440(a) also precluded Federal jurisdiction over habeas petitions filed pursuant to Section 2241. It stated only: "[Section] 440(a) does not preclude Article II court review of claims of substantial Constitutional error." 144 F.3d at 251 (citation omitted).

[or] file a motion to reopen and reconsider." *Id.* at ¶¶ 11–12. Additionally, Then alleged Section 440(d) was erroneously applied retroactively to bar his 212(c) Application and requested the matter be remanded to the BIA for an examination of his entitlement to a waiver under Section 212(c). *See id.* at ¶ 1.

Before Then filed his Reply Brief, however, the Third Circuit rendered its opinion in *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999). In *Sandoval*, the Circuit concluded Federal jurisdiction remained available under Section 2241 [10] to review habeas petitions seeking relief from final orders of deportation. 166 F.3d at 231–32. It was reasoned that neither the AEDPA nor the IIRIRA contained a clear statement of Congressional intent to eliminate habeas jurisdiction.[11] *See id.* In light of *Sandoval*, the Government filed the Amended

---

10. Section 2241, entitled "Power to grant a writ," provides, in relevant part:

> (C) The writ of habeas corpus shall not extend to a prisoner unless—
> (1) He [or she] is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> (2) He [or she] is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> (3) He [or she] is in custody in violation of the Constitution or laws or treaties of the United States; or
> (4) He [or she], being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations. . . .

28 U.S.C. § 2241. The custody requirement limits this "extraordinary remedy" to cases of special urgency involving "severe restraints on individual liberty." *See Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). The custodian of a habeas petitioner is the proper respondent to a habeas action. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). A lawful permanent resident of the United States who is subject to a final order of deportation but not yet deported satisfies the "in custody" requirement of Section 2241(c)(1). *See Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995); *Galaviz–Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir.), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *Thompson v. Perryman*, 1998 WL 473471, at *3 (N.D.Ill.1998) (slip op.).

As mentioned, Then is presently a detainee of the Detention Center of the INS. Additionally, he is subject to the Final Order of Deportation. Accordingly, Then satisfies the "in custody" requirement of Section 2241.

11. Before the *Sandoval* decision, Circuit courts were divided as to whether district courts retained subject matter jurisdiction to hear habeas petitions in light of AEDPA Section 440(a). *See Catney*, 178 F.3d 190, 195 at n. 8 (observing a Circuit split). Several Circuits, including the Third Circuit, have held that Section 440(a) of the AEDPA eliminated their authority to review direct appeals by deportable aliens alleging legal errors in deportation proceedings. *See, e.g., Morel II*, 144 F.3d at 251, *Williams v. INS*, 114 F.3d 82, 83 (5th Cir.1997); *Yang v. INS*, 109 F.3d 1185, 1194–97 (7th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).

This elimination of direct review notwithstanding, several Circuits nevertheless determined Federal district courts retain statutory or constitutional jurisdiction to review habeas petitions by deportable aliens pursuant to Section 2241 or under the Suspension Clause of the Constitution. *See Henderson v. INS*, 157 F.3d 106, 120 (2d Cir.1998); *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir.) (holding district courts retain jurisdiction under both Section 2241 and the Suspension Clause, despite the sweeping language of Section 440(a) precluding judicial review of final orders of deportation), *cert. denied*, — U.S. —, 119 S.Ct. 1140, 143 L.Ed.2d 208

Conversely, the Ninth Circuit determined Section 440(a) eliminated habeas review entirely. *See Hose v. INS*, 141 F.3d 932, 935 (9th Cir.1998) (holding District Courts do not retain habeas jurisdiction under either Section 2241 or the Suspension Clause).

Before *Sandoval*, this Circuit assumed a middle ground, concluding judicial review remained for serious constitutional errors or core constitutional concerns. *See Morel II*, 144 F.3d at 251 (holding courts retain constitutional habeas jurisdiction in situations involving "serious constitutional error").

In *Sandoval*, however, this Circuit has more definitively stated: "[D]istrict courts continue to have habeas jurisdiction under [Section] 2241." 166 F.3d at 231.

Answer to the Petition on 15 March 1999. The Amended Answer omitted its earlier jurisdictional argument, impliedly conceding the existence of subject matter jurisdiction over the Petition.

On 9 April 1999, Then filed an amended reply brief (the "Amended Reply Brief"). The Amended Reply Brief reasserts the admissions by Vega at the 7 March 1997 Deportation Hearing concerning Then's deportability were "unconsulted" and Vega's "inappropriate behavior caus[ed] [Then] actual prejudice." *See* Amended Reply Brief at ¶¶ 3, 7. Then urges the rejection of a retroactive application of Section 440(d) and requests remand of his case for "an individual[ized] 212(c) hearing." *See id.* at Prayer for Relief.

*Discussion*

A. *Standard of Review for Pro Se Submissions*

■ *Pro se* submissions, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (holding *pro se* petition cannot be held to same standard as pleadings drafted by attorneys); *Lewis v. Attorney General of United States,* 878 F.2d 714, 722 (1989).

■ When receiving a *pro se* submission from a habeas petitioner, the habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis,* 878 F.2d at 721; *United States v. Brierley,* 414 F.2d 552, 555 (3d Cir.), *cert. denied,* 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970) ("We should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.' It is the policy of courts to give a liberal construction to pro se habeas petitions.") (citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines,* 404 U.S. at 520, 92 S.Ct. 594; *Roman v. Jeffes,* 904 F.2d 192, 197 (3d Cir.1990).

B. *Application of the AEDPA*

As discussed, Section 440(a) of the AEDPA amended Section 106(a) of the INA by removing judicial review of final orders of deportation for aliens convicted of certain criminal offenses. In light of *Sandoval,* which specifically held that courts retain habeas jurisdiction under Section 2241 notwithstanding the application of Section 440(a), 166 F.3d at 231, the AEDPA analysis is limited to the alleged retroactive application of Section 440(d) of the AEDPA.

As discussed in *Then I,* the Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), reaffirmed the presumption against statutory retroactivity. The Court established a two-prong test in determining whether a statute may be applied retroactively. First, it must be determined whether "Congress has expressly prescribed the statute's proper reach." *Id.* at 269–70, 114 S.Ct. 1483. Second, in the absence of express specification of the temporal reach of a statute, consideration is given to "whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties

with respect to transactions already completed." *Id.* at 268, 114 S.Ct. 1483.

Addressing the first prong, it appears the AEDPA does not contain an express provision governing the temporal reach of Section 440(d). *See* AEDPA § 440(d), 110 Stat. 1214, 1217; *see also Lee v. Reno*, 15 F.Supp.2d 26, 44 (D.D.C.1998). Absent an express textual directive of prospectivity, the normal rules of construction apply. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). This Circuit, interpreting *Lindh*, has also stated: "[T]he rule of negative implication is part of the normal rules of statutory construction." *Sandoval*, 166 F.3d at 240 (citing *Lindh*, 521 U.S. at 326, 117 S.Ct. 2059).

Applying these principles, the *Sandoval* court concluded that both the legislative history and the principle of negative implication supported a prospective application of Section 440(d) of the AEDPA.[12] Consequently, the court determined it was unnecessary to address the second prong of the *Landgraf* analysis because "the statutory construction inquiry yield[ed] the answer that Congress intended prospectivity[.]" 166 F.3d at 240 (citing *Lindh*, 521 U.S. at 326, 117 S.Ct. 2059) (internal quotations omitted).

As stated, Section 440(d) of the AEDPA amended, in part, Section 212(c). Section 212(c) permitted deportable aliens convicted of certain crimes to apply for a waiver of deportation. Before the enactment of the AEDPA, this discretionary relief was unavailable strictly to aliens convicted of aggravated felonies or crimes of moral turpitude. Section 440(d) of the AEDPA, enacted 24 April 24 1996,[13] added drug offenses to the list of exceptions. *See* AEDPA § 440(d).

Then was convicted of the unlawful possession and distribution of a controlled dangerous substance with intent to distribute on 30 June 1995. *See* Judgment and Conviction. The deportation proceedings commenced with the filing of the Order to Show Cause on 12 August 1996. Subsequently, Vega, on behalf of Then, made the 212(c) Application on 7 March 1997 during the Deportation Hearing. *See* Deposition Hearing Tr. at 5:6–10. It appears the conviction of Then pre-dated the enactment of Section 440(d). The deportation proceedings, however, which included the filing of the Order to Show Cause, and the 212(c) Application, succeeded the enactment of Section 440(d).

Then urges a strictly prospective application of Section 440(d), which, in his view, would make him eligible for a 212(c) waiver. *See* Petition at ¶¶ 2, 16–17; Amended Reply Brief at ¶ 9. Notwithstanding a prospective application of 440(d), as requested by Then and mandated by *Sandoval*, Then remains ineligible for a Section 212(c) waiver.

Significantly, the *Sandoval* court held only that "the AEDPA amendment to

---

12. The *Sandoval* court observed Section 440(d) did not contain an effective date. 166 F.3d at 241. It was then observed the legislative history of the AEDPA revealed that the Senate version of the AEDPA bill contained language applying the Section 440(d) amendment to pending cases. The House version of the bill did not, but instead contained language making amendments concerning alien terrorists applicable to pending cases. *Id.* The final bill, however, "dropped the language from the Senate bill ... but retained the language from the House bill...." *Id.* Applying the rule of negative implication, the Circuit concluded: "Congress deliberately chose to make AEDPA Section 440(d) apply prospectively." *Id.*

13. The AEDPA was signed into law on 24 April 1996. As mentioned, however, Sections 440(d) and 440(a) bear no effective date. This Circuit has specifically held Section 440(a) became effective on the date of enactment. *See Salazar–Haro v. INS*, 95 F.3d 309, 311 (3d Cir.), *cert. denied*, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). The Circuit has not addressed whether Section 440(d) possess the same effective date. *See Sandoval*, 166 F.3d at 241. Irrespective of the effective date of Section 440(d), the *Sandoval* court has deemed it inapplicable to applications pending on the date of enactment. *See id.*

212(c) was not to be applied to *pending cases.*" 166 F.3d at 240 (emphasis added). In that case, the petitioner, Sandoval, had been convicted of marijuana possession in 1993. *See id.* at 228. In 1994, during the deportation hearing, Sandoval requested a four month stay of deportation, ostensibly because he was four months shy of meeting the seven-year residency requirement for Section 212(c) eligibility. *See id.* The immigration judge denied his request. Sandoval appealed the denial of the 212(c) application to the BIA. *See id.* While the appeal was pending, Congress enacted the AEDPA. *See id.*

The Circuit determined discretionary relief under Section 212(c) was available to Sandoval and directed the BIA to decide the merits of Sandoval's 212(c) application. *See id.* at 242. In so doing, it was reasoned: "The provision precluding discretionary relief for those convicted of drug offenses *[Section 440(d) ] was not in effect at the time Sandoval sought to petition under INA [Section] 212(c).*" 166 F.3d at 239 (emphasis added). It appears, therefore, *Sandoval* strictly precludes retroactive application of Section 440(d) to *pending* 212(c) applications. Consequently, the application of Section 440(d) to petitioners whose convictions pre-dated the enactment of AEDPA, but whose deportation proceedings and 212(c) applications post-dated the statute, is not foreclosed by *Sandoval.*

This Circuit, moreover, has addressed a similar prospectivity issue in *Scheidemann v. INS,* 83 F.3d 1517 (3d Cir.1996). *Scheidemann* held that a related provision of the INA, which similarly rendered a class of felons ineligible for Section 212(c) relief, was not retroactive in application to convictions pre-dating the enactment of the statute. The petitioner in *Scheide-*

*mann* was convicted of an aggravated felony in 1987. *See* 83 F.3d at 1519. At the time of his conviction, the statutory bar to discretionary relief for those convicted of an aggravated felony was not included in the 212(c) waiver provision; it was added to Section 212(c) by Congress on 29 November 1990. *See id.* Scheidemann, although convicted prior to the statutory bar, did not request Section 212(c) relief until four years after the addition of the aggravated felony bar. *See id.* at 1519. The preceding conviction notwithstanding, the Third Circuit held: "Because petitioner applied for [Section] 212(c) relief after November 29, 1990 ... he is properly subject to the statutory bar." *Id.* at 1526.[14]

District courts interpreting *Sandoval* have applied Section 440(d) to aliens whose convictions pre-dated its enactment, but who applied for Section 212(c) waivers after the enactment date. In *Cedillo–Gonzalez v. Garcia,* 38 F.Supp.2d 479 (W.D.Tex.1999), the court, in denying the 212(c) application of a petitioner, held:

> Here, Petitioner did not file his [Section] 212(c) application until after the effective date of [Section] 440(d). As such, the facts here do not fall within the four corners of Sandoval.... Consequently, the Court finds that *[Section] 440(d) does apply to Petitioner in spite of the fact that the underlying conviction that instigated his deportation occurred before the enactment of the 1996 amendments.*

*Id.* at 486 (emphasis added); *cf. Olvera v. Reno,* 20 F.Supp.2d 1062, 1066 n. 10 (S.D.Tex.1998) (stating "issue [of non-retroactivity] does not arise in this case

**14.** The *Sandoval* Court observed the opinion in *Scheidemann* was issued without the benefit of the *Lindh* Court's elaboration of *Landgraf* retroactivity principles. 166 F.3d at 241. However, the *Sandoval* court also distinguished *Scheidemann* on the grounds that "in *Scheidemann,* where we held the 1990 amendments applicable to pre-enactment conduct, we specified that such construction

was applicable only to aliens who applied for discretionary relief after the effective date of the 1990 amendments." 166 F.3d at 241 (citing *Scheidemann,* 83 F.3d at 1526 & n. 12) (emphasis added). *Sandoval,* therefore, did not undercut the *Scheidemann* court conclusion that the AEDPA amendment could be applied to petitioners whose convictions pre-dated its enactment.

because [petitioner's] deportation proceedings began after the AEDPA was enacted."); *Homayun v. Cravener,* 39 F.Supp.2d 837, 850–51 (S.D.Tex.1999) (granting 212(c) waiver application to petitioner when discretionary relief was requested before the enactment of Section 440(d)); *Farquharson v. INS,* 31 F.Supp.2d 403, 414 (D.N.J.1999) (stating the "AEDPA § 440(d) should not be applied to criminal aliens who *filed applications for waivers before* the statute was enacted") (emphasis added).

■ In the instant case, the deportation proceedings, commenced on 12 August 1996 with the issuance of the Order to Show Cause, were initiated well after the enactment of the AEDPA on 24 April 1996. *See* Amended Answer at 1; *see also* Then Aff. at ¶¶ 5, 6. The 212(c) Application was not requested until 7 March 1997. *See* Deposition Hearing Tr. at 5:6–10. Even though Then was convicted before the enactment of the AEDPA, the non-retroactivity concerns expressed in *Landgraf* and *Sandoval* are not present here. *See Scheidemann,* 83 F.3d at 1519; *see also Fullwood v. Reno,* No. 98–4252, 1999 WL 350142, at *2 (E.D.Pa.21 May 1999); *Olvera,* 20 F.Supp.2d at 1066 n. 10; *Almon v. Reno,* 13 F.Supp.2d 143, 144 n. 1 (D.Mass. 1998) (applying Section 440(d) where 212(c) application of petitioner was not pending when the AEDPA was enacted); *Lee,* 15 F.Supp.2d at 26, 44 n. 26 (same).

Because the deportation proceedings and the 212(c) Application post-dated the enactment of the AEDPA, Section 440(d) operates only prospectively towards Then; moreover, it does not impair any rights of Then or impose on him additional liabilities. *See Lindh,* 521 U.S. at 326, 117 S.Ct. 2059; *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *Sandoval,* 166 F.3d at 240. The Petition, insofar as it alleges the application of 440(d) violated the due process rights of Then, is dismissed.

15. Although the issue as to the timeliness of

### C. *Ineffective Assistance of Counsel*

Then additionally alleges he was denied effective assistance of counsel because Vega admitted the charges lodged against him during the 7 March 1997 Deportation Hearing without his permission. *See* Petition at ¶ 3. It is further alleged Vega subsequently failed to timely file the Appeal to the BIA. *See* Then Aff. at ¶¶ 7, 8, 10. Then asserts that a "Per Se Rule of Prejudice" should be applied to the conduct of Vega. *See* Amended Reply at ¶ 8.

■ A claim of ineffective assistance of counsel in a deportation proceeding is based on the Fifth Amendment guarantee of due process. *See Castaneda–Suarez v. INS,* 993 F.2d 142, 144 (7th Cir.1993) (deportation proceedings are civil in nature; they do not give rise to a Sixth Amendment right to counsel); *Michelson v. INS,* 897 F.2d 465, 467 (10th Cir.1990); *Lozada v. INS,* 857 F.2d 10, 13 (1st Cir.1988); *Magallanes–Damian v. INS,* 783 F.2d 931, 933 (9th Cir.1986); *Then I,* 37 F.Supp.2d at 359; *cf. Green v. INS,* 46 F.3d 313, 320 (3d Cir.1995). An alien may have a viable claim of ineffective assistance of counsel where counsel is "so ineffective as to have impinged upon the fundamental fairness of the [deportation proceedings] in violation of the [F]ifth [A]mendment [D]ue [P]rocess [C]lause." *Castaneda–Suarez,* 993 F.2d at 144 (quoting *Magallanes–Damian,* 783 F.2d at 933); *see Saleh v. United States Dep't of Justice,* 962 F.2d 234, 241 (2d Cir.1992); *Figeroa v. INS,* 886 F.2d 76, 78 (4th Cir.1989); *Lozada,* 857 F.2d at 13. In this regard, "the Fifth Amendment, like the Sixth Amendment, is not automatically violated by serious attorney errors." *Motta v. INS,* 869 F.Supp. 80, 88–89 (D.Mass.) (citing *Scarpa v. DuBois,* 38 F.3d 1 (1st Cir.1994)), *vacated on other grounds,* 61 F.3d 117 (1st Cir.1995).

#### 1. *Failure of Vega to Appeal*[15]

■ Outside of the deportation context, "[a]n attorney's failure to take or perfect

the Appeal is not explicitly raised in the Peti-

an appeal when the defendant has indicated a desire to appeal constitute[s] ineffective assistance of counsel *per se.*" *Sortino v. United States,* No. 94–5114, 1994 WL 502373, at *1 (E.D.Pa.), *aff'd,* 54 F.3d 771 (3d Cir.1995). To prove his or her claim, a petitioner is not required to show he or she was prejudiced by the failure of counsel to appeal or to state which issues he or she would have raised on direct appeal. *See Lozada v. Deeds,* 498 U.S. 430, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (*per curiam*) ("*Lozada*"); *Lozada v. Deeds,* 964 F.2d 956 (9th Cir.1992). Rather, the "failure to take an appeal, despite the [petitioner's] request, is ineffective assistance without regard to the probability of success on appeal." *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir.1994). The petitioner, however, must have requested his or her counsel to file an appeal:

> 'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue.... [T]he Constitution does not require a lawyer to advise the client of the right to appeal. That duty rests principally on the judge—and even if both judge and counsel forget to provide this advice, most defendants know about the possibility of appeal and cannot complain if they are not furnished redundant information. 'Counsel will not be found ineffective per se for failure to appeal an appealable judgment.' *Oliver v. United States,* 961 F.2d 1339, 1342 (7th Cir.) [, *cert. denied,* 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992) ]. Only a failure to appeal a judgment that the defendant desires to appeal is problematic.

*Id.; see also McHale v. United States,* 175 F.3d 115, 118–19 (2d Cir.1999) (citing *Morales v. United States,* 143 F.3d 94, 96 (2d Cir.1998)) ("[I]n order to show that appellate counsel was constitutionally deficient in not filing an appeal, the petitioner must demonstrate that he [or she] asked to have an appeal filed."); *United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993).

In *Castellanos,* the petitioner told his lawyer to appeal, but the lawyer refused, informing him that one may not appeal from a sentence based on a plea of guilty. *Castellanos,* 26 F.3d at 718. The Seventh Circuit remanded the matter for the determination of "whether Castellanos ... timely told [his] lawyer[ ] that [he] wanted appellate review." *Id.* at 720.

■ The communication to counsel of a petitioner's desire to appeal also is a prerequisite to viability of ineffective assistance claims in the immigration context. Specifically, in *Matter of Lozada,* 29 I & N Dec. 637 (BIA 1988), *aff'd,* 857 F.2d 10 (1st Cir.1988), the BIA announced requirements for motions to reopen or reconsider based upon allegations of ineffective assistance of counsel:

> A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts. In the case before us, the affidavit should include a *statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard.*

*Id.* at 639 (emphasis added); *see also Motta,* 869 F.Supp. at 88–89 (analyzing whether agreement between petitioner and counsel was reached for counsel to appeal decision of immigration judge).

■ Irrespective of whether the failure of counsel to effectuate a timely appeal of a decision of an immigration judge is *per se* prejudicial, it appears the actions of Vega do not constitute a fundamental miscarriage of justice in violation of the Fifth Amendment. Specifically, it appears from

tion, it is raised in the Then Affirmation, attached to the Petition, *see* Then Aff. at ¶¶ 10–

12, and will be addressed.

the Petition and Then Affirmation that Then did not communicate to Vega his desire to appeal the denial of this 212(c) Application. Then alleges he was "informed by [Vega] that he'll take care of the [7 March 1997][D]eportation [P]roceeding while [Then] returned to [his] family in New Jersey." *See* Then Aff. at ¶ 7. As observed in *Then I*, neither the Petition nor Affirmation alleges Then requested Vega to file the Appeal. *See Then I*, 37 F.Supp.2d at 361.

Only after *Then I* was filed, discussing this very point, did Then responsively argue: "I was told of the denial [of the 212(c) Application at the Deportation Hearing] and agreed with him to file the appeal." *See* Reply Brief at ¶ 6. Then's apparent lack of interest in the deportation proceedings, as evidenced by his waiver of his right to appear for the 7 March 1999 Hearing, *see* Then Aff. at ¶¶ 7, 8, belies this assertion. In his recent submissions, moreover, Then again fails to allege he explicitly requested an appeal. *See* Amended Reply Brief. Then simply alleges Vega "filed a late notice of appeal." *Id.* at ¶ 4A, 4B.

As discussed, effective assistance of counsel requires only that counsel respect the desire of the client to file an appeal. *See United States ex rel. O'Brien v. Maroney*, 423 F.2d 865, 868 (3d Cir.1970) ("[T]o insure the effectiveness of such assistance, the appointed trial attorney has been charged with the duty of respecting his [or her] client's desire to file an appeal, even if in his [or her] best professional judgment the appeal is utterly without merit."). "Only a failure to appeal a judgment that the defendant desires to appeal is problematic." *Castellanos*, 26 F.3d at 719. As explained, it appears from the Petition and the Then Affidavit that Then did not ask for an appeal.

Additionally, as stated, it appears Then was not present at the 7 March 1997 Deportation Hearing. *See* Then Aff. at ¶ 7. Then, therefore, was not present when the Immigration Judge informed Vega of the right to appeal. *See* Deportation Hearing Tr. at 5:20–21. "An alien cannot be heard to complain when, with notice of a deportation hearing, he [or she] voluntarily fails to appear for the hearing, and it is held in his [or her] absence." *Sewak v. INS*, 900 F.2d 667, 672 (3d Cir.1990); *see Reyes–Arias v. INS*, 866 F.2d 500, 504 (D.C.Cir.1989); *United States v. Dekermenjian*, 508 F.2d 812, 814 (9th Cir.1974). Then concedes he gave Vega permission to handle all matters relating to his deportation proceedings. *See* Then Aff. at ¶ 7. He cannot now use his lack of interest in the 7 March 1997 Deportation Hearing as a means of obtaining a different result. Based on his initial failure to establish in the Petition or Then Affirmation that he requested an appeal, and his continued inconsistency in alleging same, Then has not evinced he communicated any desire to appeal.

### 2. *Prejudice*

 Then, moreover, has not demonstrated he was prejudiced by Vega's admission of the allegations contained in the Order to Show Cause. "To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show not only ineffective representation, but also prejudice to him [or her] which occurred as a result of that ineffectiveness." *Figeroa v. INS*, 886 F.2d 76, 78 (4th Cir.1989) (citing *Ramirez–Durazo v. INS*, 794 F.2d 491, 499 (9th Cir.1986)); *accord Sene v. INS*, 103 F.3d 120, 1996 WL 667906, at *1 (4th Cir.19 Nov.1996) (per curiam). An alien has been prejudiced if, but for the ineffectiveness of counsel, the outcome of the deportation proceedings may have been different. *See Barraza Rivera v. INS*, 913 F.2d 1443, 1448 (9th Cir.1990).

 Then, has not, and cannot, show that the outcome of the deportation proceedings may have been different but for the conduct of Vega. It appears the

admissions of Vega concerning Then's deportability were ineffectual in light of independent evidence establishing his deportability. *See* Golub Certification at Exhibits A, B and D.[16] The only facts Vega admitted at the 7 March 1997 Deportation Hearing were facts conceded by Then in the Petition to be true, namely that he is an alien and that he had a drug conviction.

Also, discretionary relief under Section 212(c) was no longer available to aliens whose deportation proceedings commenced after April 1996. *See* AEDPA § 440(d). As such, the Immigration Judge did not err in relying upon Section 440(d) to deny the Section 212(c) Application.

As discussed, moreover, Then voluntarily refused to appear at the 7 March 1997 Deportation Hearing, and therefore "cannot be heard to complain[.]" *Sewak*, 900 F.2d at 672; *see Reyes–Arias*, 866 F.2d at 504; *Dekermenjian*, 508 F.2d at 814. Then was given notice of the 7 March 1997 Deportation Hearing and afforded an opportunity to appear and offer evidence on his behalf. Then, however, concedes he gave Vega permission to handle all matters relating to his deportation proceedings. *See* Then Aff. at ¶ 7. Nowhere is it alleged that Then also gave Vega specific instructions not to admit the allegations contained in the Order to Show Cause. *See Matter of Lozada*, 19 I & N Dec. At 639 (ineffective assistance of counsel claim in immigration hearing requires proof that the attorney ignored instructions given by alien).

Because Then has not alleged prejudice resulting from the application of Section 440(d) to bar his Section 212(c) waiver or the conduct of Vega, the ineffective assistance of counsel claim is dismissed with prejudice as well.

**16.** Exhibit A of the Golub Certification is a copy of the Immigrant Visa and Alien Registration of Then; Exhibit B is a copy of the Judgment of Conviction and Order of Com-

*Conclusion*

For the reasons discussed, the Petition is dismissed with prejudice. There is no probable cause for appeal.

mitment issued by the Superior Court; as noted, Exhibit D is a copy of the 7 March 1997 Deportation Hearing Transcript.