**Tameshwar SEWAK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 89–3531.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1990.

Decided April 6, 1990.

Rehearing Denied June 25, 1990.

As Ammended June 26, 1990.

Irving Edelman (argued), New York City, for petitioner.

Joan K. Garner, U.S. Attorney's Office, Philadelphia, Pa., and Mark C. Walters, Joseph F. Ciolino, Steven L. Barrios (ar-

gued), Office of Immigration Litigation, Washington, D.C., for respondent.

Before SLOVITER, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Petitioner Tameshwar Sewak (Sewak) seeks review of a final order of the Board of Immigration Appeals (BIA) upholding an immigration judge's deportation order. The immigration judge's order was entered *in absentia* and directed Sewak's return to his country of origin, Guyana. Sewak claims that he did not receive notice of his deportation hearing before the immigration judge, in violation of his constitutional right to due process and his statutory right to a "reasonable opportunity to be present" at his own deportation hearing.

Instead, Sewak states, the Immigration and Naturalization Service (INS) notified only an attorney who had entered an unauthorized written appearance for Sewak in the proceeding. Sewak claims that he did not know of this attorney's unauthorized entry of appearance, that he never had any contact with the attorney and that the attorney never informed him of the deportation hearing. The record shows that no one appeared at the deportation hearing on Sewak's behalf. Sewak contends that he and his real attorney had no opportunity to attend the hearing and present Sewak's side of the case.

Because of this case's procedural posture, the record before us lacks the evidence necessary to decide the merits of Sewak's petition. However, if the facts that Sewak asserts are true, then the immigration judge's entry *in absentia* of an order to deport Sewak implicates both his constitutional right to due process and his statutory right to a "reasonable opportunity to be present" at the hearing. We will therefore grant Sewak's petition for review and remand this matter to the BIA with instructions that it in turn remand the proceeding to the immigration court for consideration of Sewak's motion to reopen his deportation proceeding.

## I.

On April 3, 1986, Sewak entered the United States through a crossing near Laredo, Texas, linking this country with Mexico. According to Sewak, immigration officials at the border assumed he was a Mexican visiting this country on a shopping trip. As a result, he was allowed to enter the country without undergoing immigration inspection. One hundred miles from the border, a border patrol agent stopped Sewak and detained him for having entered the country without inspection. Sewak was taken to Houston, Texas, questioned and given an order to show cause why he should not be deported.

The order, issued on April 4, 1986, informed Sewak that his deportation hearing would be held at a "DATE, TIME AND PLACE TO BE SET." Petitioner's Appendix (App.) at A–2. It charged Sewak with having violated 8 U.S.C.A. § 1251(a)(2) (West 1970), which states, in relevant part:

(a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

(2) entered the United States without inspection....

On April 10, 1986, an attorney named Tom Brashier (Brashier) filed a written appearance on behalf of Sewak in the immigration court, using INS form G–28. *See* App. at A–3. On the form, Brashier stated that he was an attorney admitted to practice before the Supreme Court of Texas. The form also contained Sewak's name, file number and an address for Sewak in Bronx, New York. INS form G–28 has a space for the client to sign and consent to the INS's release of documents to the attorney.[1] No one had signed the G–28 that Brashier submitted. *See id.*

---

1. A signature on form G–28 is required when the person being represented is a United States citizen or an alien lawfully admitted for permanent residence. Although Sewak was neither of these, Brashier's G–28 was prepared for Sewak's signature. *See* App. at A–3. While Sewak's failure to sign the G–28 does not prove that Brashier was not retained by or on behalf of Sewak, it

Sewak was released from INS custody on April 16, 1986, when a resident of Jersey City, New Jersey, posted Sewak's $4,500 bond. *See id.* at A–4. The INS on that date sent the bond's obligor a "Notice to Deliver Alien," informing her that she could forfeit her bond if she failed to surrender Sewak at his deportation hearing. *See id.* at A–5. The Notice to Deliver stated that the time, date and location of the deportation hearing still remained to be set. *See id.* Also on April 16, 1986, Sewak gave the INS notice that his mailing address would be the same as his bond obligor's, in Jersey City, New Jersey. *See id.*

On May 14, 1986, the INS sent notice to Brashier that Sewak's deportation proceeding had been scheduled. *See id.* at A–6. The INS does not dispute Sewak's assertion that no notice was sent to him or to the obligor on his bond. The notice to Brashier informed him that deportation proceedings would commence against Sewak on July 29, 1986, before Immigration Judge Robert Brown in Houston, Texas. The notice stated that Sewak's failure to appear could result in forfeiture of his bond, a hearing in his absence, entry of an order of deportation against him *in absentia* and issuance of a warrant for his arrest. *See id.*

The hearing took place as scheduled on July 29, 1986. Neither Sewak nor Brashier was present. No one presented any evidence on behalf of Sewak. On that date, Immigration Judge Michael Suarez found Sewak deportable as charged in the order to show cause and ordered Sewak deported to Guyana. *See id.* at A–7.

Sewak claims that he did not learn of the deportation hearing until he received in the mail a copy of the decision and order of the immigration judge finding him deportable *in absentia.* Instead of moving to reopen proceedings in the immigration court,[2] Sewak appealed the order of deportation to the BIA sometime in August of 1987. *See id.* at A–9.[3] In his brief in support of the appeal, Sewak stated that he never received notice of his deportation hearing and thus was prevented from introducing evidence in his favor and examining the witnesses and other evidence that the INS had put forth in support of its case.

While Sewak's appeal was pending before the BIA, the INS notified Sewak that it had arranged to have him deported from Houston, Texas, to Guyana on September 16, 1987. *See id.* at A–13. Sewak filed a motion seeking an emergency stay of deportation in the immigration court. Immigration Judge Robert Brown issued a stay in favor of Sewak on the day he was due to be deported, continuing until the BIA ruled on his appeal. *See id.* at A–14.[4]

The BIA treated Sewak's appeal as a request for a new hearing before the immigration court. *See id.* at A–15. Finding Sewak's appeal was not filed in a timely manner, the BIA nevertheless reviewed the merits of his appeal on certification. *See* 8 C.F.R. § 3.1(c) (1989).[5] The Board decided Sewak's case on what seem to be alternate grounds. First, it found that notice to Brashier was reasonable notice to Sewak and that the immigration judge properly conducted the deportation hearing in Sewak's

---

also does not contradict Sewak's claim that he had no knowledge of Brashier's representation.

**2.** Under 8 C.F.R. §§ 3.22(b), 103.5(a) & 242.22 (1989), an alien can file a motion with the immigration court for reopening of an adverse decision of that court based upon the discovery of new facts. However, the alien cannot move for reopening in the immigration court once jurisdiction over the case becomes vested in the BIA. *See id.* § 242.22.

**3.** The exact date does not appear. *See also* note 5, *infra.*

**4.** Once Sewak served a copy of his petition for review in this Court upon the INS, Sewak's

deportation automatically was further stayed pending our determination of the petition. *See* 8 U.S.C.A. § 1105a(a)(3) (West 1970).

**5.** From the record, it appears that Sewak's attorney and the INS disagreed over whether Sewak's appeal to the BIA was timely. *See* App. at A–10, A–14. An alien has thirteen days after the date the immigration court mails an order of deportation to appeal to the BIA. *See* 8 C.F.R. §§ 3.36(b), 242.21(a) (1989). On petition to this Court, neither party argues the timeliness of Sewak's appeal to the BIA. Under the regulations, the BIA is permitted to review the merits of an untimely appeal on certification. *See id.* § 3.1(c). The BIA followed this procedure on Sewak's appeal. *See* App. at A–15.

absence.[6] Then, applying what appears to be a harmless error analysis, the BIA concluded that Sewak, in his appeal, did not dispute that he was deportable and did not raise any valid defense to deportation.[7] *See* App. at A–15. Sewak filed a timely petition with this Court seeking review of the BIA's final order of deportation.

## II.

We have jurisdiction over this petition for review of the BIA's final order of deportation pursuant to 8 U.S.C.A. § 1105a(a)(1) (West Supp.1989). As already noted, the BIA reviewed this matter on certification since it found that Sewak's appeal to it was filed out of time. The immigration court's authority to order Sewak deported to Guyana is based on 8 U.S.C.A. § 1252(b) (West Supp.1989) and 8 C.F.R. § 242.8(a) (1989).

The Immigration and Nationality Act provides that "[a]n order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C.A. § 1105a(c) (West 1970). In *Alleyne v. United States INS*, 879 F.2d 1177,

1183–84 & n. 10 (3d Cir.1989), we recognized that the exhaustion of administrative remedies is not always required when the petitioner advances a due process claim. *See Vargas v. United States Dep't of Immigration & Naturalization*, 831 F.2d 906, 908 (9th Cir.1987) ("due process claims generally are exempt from [the exhaustion requirement] because the BIA does not have jurisdiction to adjudicate constitutional issues"). But here, as in *Alleyne* and *Vargas*, Sewak's due process claim amounts to a procedural error correctable through the administrative process. Thus, before we can consider Sewak's petition, we must assure ourselves that he has exhausted his administrative remedies.

We have said that our jurisdiction over petitions to review INS orders depends upon the alien's exhaustion of "the administrative remedies available to him as of right." *See Bak v. United States INS*, 682 F.2d 441, 442–43 (3d Cir.1982) (per curiam) (holding exhaustion requirement is jurisdictional); *Jacobe v. INS*, 578 F.2d 42, 44 (3d Cir.1978) (same). Sewak raised before the BIA, and the BIA considered, the same issues he raises in his petition for review in this Court.[8] It cannot be denied that Se-

---

**6.** Where an alien is represented by counsel, notice to counsel is deemed to be notice to the alien. *See* 8 C.F.R. § 292.5(a) (1989).

**7.** In holding that Sewak's absence was harmless error, the BIA seems to suggest that the only way an alien can avoid deportation is through an affirmative defense. This is incorrect. The Supreme Court has held that the burden of proof is upon the INS to show the facts supporting deportability by clear, unequivocal and convincing evidence. *See Woodby v. INS*, 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966); *see also* 8 C.F.R. § 242.14(a) (1989). Therefore, it is hard to imagine a case in which lack of notice to an alien, unrepresented by counsel, who contests deportability and fails to appear at his deportation hearing would be harmless error, because such an alien is deprived of his right to challenge the INS's evidence against him. *See* 8 C.F.R. § 242.16(a) (1989).

In addition, the INS maintains that Sewak waived the right to seek any affirmative relief available to him at the deportation hearing when he failed to attend. *See* Brief for Respondent at 8–9. The waiver argument is circular. It assumes that Sewak had a reasonable opportunity to be present at his deportation hearing.

Whether he did remains to be determined. Sewak, in his brief, states that he was deprived of the possibility of seeking voluntary departure from this country in lieu of deportation. *See* Brief for Petitioner at 10–11. Of course, if his constitutional right to notice and hearing was violated, he must also be given an opportunity to seek this relief in the immigration court. Sewak also may be seeking to assert circumstances that may constitute a factual defense; he claims his entry at the border was not illegal because the INS waved him through without asking him to undergo inspection.

**8.** Specifically, Sewak gave the following reasons for his appeal to the BIA in his notice of appeal filed there:

a. The petitioner herein was denied due process of law.

b. Neither the petitioner, nor anyone having any connection or relationship to the petitioner was notified of any hearing date.

c. The holding an Immigration hearing in absentia is a violation of petitioner's rights and there has been no demonstration that the petitioner was afforded an opportunity to present any evidence illegally [sic].

d. There is no evidence that the evidence allegedly presented is demonstrative of the

wak has exhausted his remedy of appeal to the BIA. *Cf. Alleyne,* 879 F.2d at 1182 (§ 1105a(c) "bars consideration of particular questions not raised in an appeal to the Board"). The question remains, however, whether Sewak failed to exhaust his administrative remedies as § 1105a(c) requires because he did not exercise his procedural "right" to file a motion to reopen in the immigration court asking it to exercise the discretion it has to grant the relief he seeks.[9]

Ordinarily, Sewak first could have sought reopening in the immigration court on the basis of newly discovered evidence instead of appealing its deportation order to the BIA. However, Sewak claims that he did not learn of the circumstances surrounding the original hearing, including Brashier's allegedly unauthorized entry of appearance, until after he appealed to the BIA and received the record from the INS. Sewak had only thirteen days to file a timely appeal with the BIA, *see* 8 C.F.R. §§ 3.36(b), 242.21(a) (1989), and he claimed at oral argument that he filed the appeal as soon as he learned of the immigration court's deportation order against him. A motion to reopen in the immigration court can no longer be made once an appeal is filed with the BIA. *See id.* § 242.22 (1989).

■■■■ Sewak's failure to move for reopening in the immigration court before appealing to the BIA did not constitute a failure to exhaust his administrative remedies that would strip us of jurisdiction. To hold otherwise would deprive Sewak of a remedy he did not pursue because the due process violation he asserts left him unaware of the circumstances that made it available. Because of Sewak's alleged initial unawareness of the basis upon which he could have sought reopening in the immigration court, we also conclude that his appeal to the BIA was not a waiver that

precludes him from seeking to reopen in the immigration court.

■■■■ When an alien claims that a deportation hearing was wrongfully held in his absence, we ordinarily review the record for abuse of discretion. Congress has given immigration judges discretion to hold deportation proceedings in an alien's absence where the "alien has been given a reasonable opportunity to be present ... and without reasonable cause fails or refuses to attend...." 8 U.S.C.A. § 1252(b) (West Supp.1989). *See Baires v. INS,* 856 F.2d 89, 91 (9th Cir.1988). Our review of the question of whether a total lack of notice to the alien violates his right to due process is, nevertheless, plenary. We are unable finally to decide the due process issue on this petition, however, because the factual record is not developed and no immigration judge has yet had an opportunity to exercise his informed discretion under the statute.

## III.

■■■■ With respect to the merits of his petition, Sewak argues that he had a right to notice of his deportation hearing.

### A.

In *Chlomos v. United States Dep't of Justice, INS,* 516 F.2d 310, 313 (3d Cir. 1975), this Court wrote: "An alien subjected to deportation proceedings is entitled to due process of law." In *Chlomos,* we quoted the following passage from *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945):

We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live

---

fact that the respondent was able to prove to sustain the charges against the petitioner.

e. Petitioner's attorney was never afforded the opportunity to examine the record file or to cross-examine witnesses unfavorable to the petitioner.

f. Petitioner was precluded from presenting evidence and witnesses favorable to him.

App. at A–9.

9. We note that while reopening is discretionary, there could be no proper exercise of discretion to deny reopening if the evidence Sewak produced at the hearing established that he was denied the notice required by due process.

and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

In *Maldonado–Perez v. INS*, 865 F.2d 328 (D.C.Cir.1989), the court examined a potential deportee's due process rights. It wrote: "The Supreme Court has established the minimum requirements for constitutional procedural due process as some form of meaningful or fair hearing." *Id.* at 332. *See also Landon v. Plasencia*, 459 U.S. 21, 38, 103 S.Ct. 321, 332, 74 L.Ed.2d 21 (1982) (Marshall, J., concurring in part and dissenting in part) ("While the type of hearing required by due process depends upon a balancing of the competing interests at stake, due process requires 'at a minimum ... that deprivations of life, liberty or property by adjudication be preceded by notice and opportunity for hearing.'" (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950))).

The court in *Maldonado–Perez* continued: "Likewise, Congress set the minimum requirements for statutory due process in ... 8 U.S.C. § 1252(b), directing that a 'special inquiry officer' (immigration judge) conduct a proceeding with all the procedural methods to gather evidence insuring that the alien 'have [a] reasonable opportunity to be present.'" 865 F.2d at 332. Concluding its exposition of a potential deportee's due process rights, the court wrote: "Since the statutory requirement for procedural due process appears to meet the minimum constitutional requirement, the statutory requirement is sufficient procedural due process for a deportation hearing." *Id.*

The relevant statute provides:

If any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present.

8 U.S.C.A. § 1252(b). Considering this statute, the Supreme Court has stated: "The respondent must be given 'a reasonable opportunity to be present at [the] proceeding,' but if the respondent fails to avail himself of that opportunity the hearing may proceed in his absence." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984).

The United States Courts of Appeals for the District of Columbia and the Ninth Circuits have both held that an alien cannot be heard to complain when, with notice of a deportation hearing, he voluntarily fails to appear for the hearing, and it is held in his absence. *See Reyes–Arias v. INS*, 866 F.2d 500, 504 (D.C.Cir.1989); *Maldonado–Perez*, 865 F.2d at 333; *United States v. Dekermenjian*, 508 F.2d 812, 814 (9th Cir. 1974).

However, Sewak, in his petition, contends he is entitled to a new hearing on the merits of his case because he did not receive reasonable notice of his deportation hearing. Our review of the record leads us to conclude that the issue of whether Sewak received reasonable notice of his hearing has a factual component that so far remains unresolved.

### B.

Sewak maintains that Brashier was not authorized to enter an appearance as counsel on his behalf, that Brashier did not relay notice of the hearing to Sewak, that Sewak's address on the G–28 that Brashier submitted was falsified and that the immigration court should have determined that notice of the deportation hearing to Brashier was not reasonable notice to Sewak because Sewak had not signed the G–28. In addition, Sewak argues that the INS should have directly notified him or the obligor on his bond once the deportation hearing was scheduled.

The INS, however, contends that notice to an alien's attorney is reasonable notice to the alien, that where an alien is represented by counsel only counsel receives notice of the scheduling of a deportation

proceeding, *see* 8 C.F.R. § 292.5(a) (1989), that G–28s are often unsigned by the alien and that the unsigned G–28 shows that Brashier was Sewak's former counsel.[10] In addition, the INS states that an alien is notified of his deportation hearing directly only when he is not represented by counsel and that the INS has no duty to inform the obligor on an alien's bond of the deportation hearing's scheduling.

If Sewak's version of the facts is true, he would be entitled under the statute and the Constitution to a new hearing before the immigration court because he did not have a reasonable opportunity to be present at his deportation proceeding and the deportation order was entered in his absence without notice or an opportunity to be heard. On the other hand, if it appears that Brashier was retained by Sewak, or by someone authorized to act on Sewak's behalf, Sewak's argument that he lacked notice of the hearing would fail.

As an appellate court we do not take testimony, hear evidence or determine disputed facts in the first instance. Instead, we rely upon a record developed in those fora that do take evidence and find facts. Congress has expressly limited our determination of petitions for review of orders of deportation solely to the administrative record and the appropriately supported findings of fact made below. *See* 8 U.S.C.A. § 1105a(a)(4) (West 1970); *Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980) ("the factual record necessary to proper review by this court can only be made by the Immigration Judge"), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). On this record, the key facts surrounding Brashier's entry of appearance on behalf of Sewak are missing. The immigration court never took evidence on this point. It merely assumed that Brashier was Sewak's attorney, relying upon the unsigned G–28.

The BIA reviews findings made on the record in the immigration court, *see* 8 C.F.R. § 3.5 (1989), and thus it is generally powerless to take evidence in the first instance concerning facts upon which the opposing parties disagree.[11] The BIA's reliance upon the INS's representation that Brashier's G–28, which was a part of the record forwarded from the immigration court, proved that he was Sewak's attorney is not the equivalent of a factual finding "supported by reasonable, substantial, and probative evidence" that Brashier was Sewak's former attorney. *See* 8 U.S.C.A. § 1105a(a)(4).

The facts necessary to decide whether the BIA correctly found that the immigration judge did not abuse his discretion in holding the deportation hearing in Sewak's absence have not been determined. Therefore, relief on Sewak's petition for review is necessarily limited to a remand of this matter to the BIA with instructions that it further remand the proceeding to the immigration court for consideration of Sewak's claim that he is entitled to reopen his deportation proceeding.

### C.

Under the applicable regulation, "[a] motion to reopen will not be granted unless the immigration judge is satisfied that evidence sought to be offered is material and

---

**10.** The INS seeks to place Sewak's petition in the context of a claim of ineffective assistance of counsel. *See* Brief for Respondent at 6. So cast, the INS argues that Sewak's ineffective assistance of counsel claim remains unexhausted because he did not present it to the BIA. *See id.* Sewak's petition cannot be so characterized. It does not allege ineffective assistance of counsel. Sewak claims only lack of notice. Therefore, we reject the INS's suggestion that we dismiss Sewak's petition and limit his remedy to a motion to reopen before the BIA asserting ineffective assistance of counsel instead of allowing him to seek reopening in the immigration court because he was not given a reasonable opportunity to be present at his deportation hearing. If the immigration court properly determines that Brashier was Sewak's attorney and denies his motion to reopen on that basis, Sewak may then have an ineffective assistance of counsel claim. There is no way to determine that now.

**11.** One instance when the BIA is allowed to consider new evidence is in a motion for reopening before the BIA. *See* 8 C.F.R. § 3.8(a) (1989). If such a reopening is granted, the case is then remanded to the immigration court so that it may conduct the reopened proceeding. *See id.* § 3.8(d).

was not available and could not have been discovered or presented at the hearing...." 8 C.F.R. § 242.22 (1989). Thus, under the regulation, the decision to allow reopening rests within the discretion of the immigration judge. However, if Sewak's version of the facts is true, his assertions are material to his due process right to have a reasonable opportunity to attend his deportation hearing. In addition, Sewak claims that the evidence he seeks to introduce was not available to him at the time of the deportation hearing, because he did not then know that Brashier had made his allegedly unauthorized appearance on his behalf.

Furthermore, the regulations provide that "[a] motion to reopen shall state the new facts to be proved at the reopened proceeding and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 103.5(a) (1989). When Sewak moves to reopen his deportation hearing, he will have to assert in sworn statements that he did not receive notice of his immigration proceeding and that Brashier was not retained by him or by anyone authorized to act on his behalf. Then, if the immigration court in its discretion finds that Sewak's affidavits and any other material evidence he submits are credible, he will be entitled to factual findings on the issue of whether he received reasonable notice of his deportation hearing. If Sewak prevails at that stage, the immigration court can grant a reopening of the merits of his case. Of course, the INS will also be entitled to introduce material evidence to rebut Sewak's case both on reopening and on the merits if reopening is granted.

The procedures that the applicable regulations afford for reopening a deportation proceeding appear to be capable of protecting Sewak's right to due process. Cf. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (establishing balancing test for analyzing whether particular procedures meet due process requirements). If his motion to reopen is denied, Sewak's legal claims can be considered with the benefit of a full record. As the court said in *Roque–Carranza v. INS*, 778 F.2d 1373, 1374 (9th Cir.1985), a remand at this juncture "will avoid any premature interference with the agency's processes and, in addition to affording the parties and courts the benefit of the agency's expertise, it will compile a record which is adequate for judicial review." However, given an alien's right to notice of his deportation hearing, Sewak's version of events, if found to be credible by the immigration judge, would seem to entitle him to a reopening of his deportation hearing.

The parties prematurely ask us to choose between two diametrically opposed factual scenarios. Even if the record contained Sewak's statements in evidentiary form, we would be powerless to find the necessary facts and, based upon them, exercise the discretion Congress has given the immigration court. Moreover, since the record is devoid of the key facts concerning whether Brashier was ever Sewak's attorney, we are unable to exercise our judicial function of reviewing the BIA's resolution of these issues. We must therefore remand this case to the immigration court so that it may find the facts and exercise the discretion Congress has given it within the confines of the Constitution's due process requirement.

## IV.

For the foregoing reasons, we will grant Sewak's petition for review and remand this matter to the BIA with instructions that it further remand this proceeding to the immigration court so that Sewak can move for reopening of the deportation proceeding held in his absence.

The immigration court's order of deportation against Sewak shall be stayed for sixty days, to allow Sewak to file a motion to reopen before the immigration court. If such a motion to reopen is filed within that period, the order shall be stayed for such further time as is necessary for the disposition of that motion.