

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-2004

# Paparizo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2034

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Paparizo v. Atty Gen USA" (2004). *2004 Decisions.* Paper 458.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/458

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-2034 and 04-2474

_____

LORENC PAPARIZO,
Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,
Respondent

_____

On Petitions for Review of Orders of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A-77-626-713)

_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2004

Before: RENDELL, FISHER and VAN ANTWERPEN, Circuit Judges.

(Filed: July 28, 2004)

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Lorenc Paparizo, a citizen of Albania, petitions for review of a decision by the

Board of Immigration Appeals ("BIA") denying his application for asylum, withholding

of removal, and protection under the Convention Against Torture ("CAT"). The BIA summarily affirmed the determination of the Immigration Judge ("IJ") that Paparizo had not suffered persecution in Albania on account of his Greek ethnicity, and that he did not have a well-founded fear of future persecution. We have jurisdiction under 8 U.S.C. § 1252. We will deny Paparizo's petitions for review.

## I.

Paparizo is a twenty-five year-old citizen of Albania, and he is an ethnic Greek. In October of 1998, his family immigrated to the United States. Paparizo was not able to accompany them because he was too old to obtain derivative immigrant status through his parents. Paparizo claims that he began to experience persecution in Albania on account of his Greek ethnicity after his family's departure.

In January of 1999, the Albanian police stopped Paparizo's taxi while he was carrying a passenger. According to Paparizo, the police beat both Paparizo and the passenger and accused Paparizo of being a "filthy Greek." Then, in March of 1999, Paparizo received an anonymous letter threatening his life and referring to his father as a "Greek spy." Paparizo did not produce this letter at his hearing.

On June 2, 1999, Paparizo was again stopped by the police while carrying passengers in his taxi. Paparizo testified that the police stole some items from him and his passengers and then arrested him. He further testified that at the police headquarters he spent two hours in a cell, where he was beaten and verbally abused by two policemen

2

wearing masks.

Finally, Paparizo testified that in November of 1999, again while he was driving his taxi, another car approached him and a masked man asked him to stop the car. Paparizo became frightened and continued driving. According to Paparizo, the masked man in the other car began to shoot at him, and someone threw a smoke grenade into Paparizo's car. Paparizo was not injured, but he alleges that his attackers were either members of the police force or members of an armed gang operating on police instructions. After this incident, Paparizo decided to leave Albania.

In December of 1999, Paparizo was caught attempting to enter the United States with a fraudulent Czech passport, and he was subsequently charged with illegally seeking admission into the United States. In his removal proceedings, Paparizo conceded removability, and requested relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. The IJ found that Paparizo was credible, but denied his asylum application based on his determination that there was no past persecution on account of ethnicity, and that the objective evidence did not support a reasonable fear of future persecution. The BIA affirmed the IJ's decision without opinion.

On appeal, Paparizo raises three issues. First, he contends that the IJ ignored objective evidence of persecution against Albanian Greeks contained in the record. Second, he asserts that the IJ failed to provide him with the opportunity to present

3

additional evidence before rendering a decision. And third, he urges that the BIA's streamlining procedures under 8 C.F.R. § 1003.1(e)(4) violate the Separation of Powers doctrine. We will briefly discuss each of these issues below.

## II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution, and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc).

Our review is limited to ensuring that any factual findings made by the agency are supported by substantial evidence in the record. Id. at 247. We may reverse the IJ's decision only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Dia, 353 F.3d at 247.

## III.

Paparizo contends that the IJ erred in denying his application because objective

4

evidence of persecution contained in the record was ignored. Although the IJ found that Paparizo was credible, he also found that there was no evidence that Paparizo had suffered past persecution on account of his Greek ethnicity. The IJ reasoned that the persecution Paparizo alleged resulted from the general corruption of the Albanian police force and was not motivated by a desire to persecute the Greek minority. This reasoning was in part based on the 1999 State Department's Country Report, which detailed the lawlessness of the Albanian police. Further, the IJ concluded that Paparizo's own testimony did not establish that he was persecuted on account of his ethnicity, since, for example, he had indicated that his non-Greek passengers were also beaten and robbed.

Accordingly, the IJ proceeded to consider whether objective evidence in the record supported a well-founded fear of future persecution. The IJ again relied on the 1999 Country Report, which stated that the Albanian government "played a constructive role in maintaining the nation's generally positive record on the treatment of minorities." Therefore, although Paparizo displayed a subjective fear of persecution upon return to Albania, the record did not support a finding that his fear was objectively reasonable.

On appeal, Paparizo contends that the IJ failed to consider certain record evidence relevant to his asylum claim. However, he only points to the 2003 Country Report. This report was not, and could not have been, included in the administrative record because it was not released until February of 2004, long after the BIA had already issued its decision. Accordingly, Paparizo cannot rely on this report to challenge the BIA's

5

decision.[1]  8 U.S.C. § 1252(b)(4)(A); see also Sewak v. INS, 900 F.2d 667, 673 (3d

Cir.1990).  Aside from this report, Paparizo points to no evidence in the record that the IJ

failed to consider.  Therefore, we conclude that the IJ did not err in this respect, as

Paparizo urges, and the denial of his asylum application was based on substantial

evidence.

## IV.

Paprizo next asserts that the IJ failed to provide him with the opportunity to

present additional evidence before rendering a decision. He essentially urges that had he

known that the IJ was not persuaded that he had met his burden, he would have offered

further evidence supporting his claims.[2]  Paparizo bases this contention on the Handbook

on Procedures and Criteria for Determining Refugee Status under the 1951 Convention

("the Handbook").  The Handbook states that an "examiner" must see to it that an

applicant for asylum has the opportunity to present his case as fully as possible with all

available evidence.

Here, there is nothing in the record indicating that the IJ prohibited or discouraged

---

[1]Even if we were able to consider the objective evidence contained in the 2003 Country Report, we could not find that the evidence compels a contrary conclusion from that of the IJ.  The 2003 Country Report discusses tension between Albanians and Albanian Greeks, but it does not indicate that the Albanian government encourages or willfully ignores persecution of the minority.

[2]The evidence he describes relates to the political and cultural associations in which members of his family had been active.  We note that such evidence would have been irrelevant to his asylum application, as it was premised solely on his ethnicity.  In any event, nothing prevented Paparizo from adducing this evidence at his hearing.

Paparizo from providing any additional evidence that may have supported his case or that Paparizo ever requested permission to offer further evidence. Moreover, the IJ did not indicate that there was evidence missing from the record, the presence of which may have motivated him to grant Paparizo's application. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2003) (discussing when and how the agency may request corroborating evidence from otherwise credible applicants in order to satisfy the burden of proof). Furthermore, we are not bound by the guidelines set forth in the Handbook. Id. at 553. Accordingly, we reject Paparizo's second challenge to the agency proceedings.

V.

Lastly, Paparizo urges that the BIA's streamlining procedures violate the Separation of Powers doctrine because they transfer the Attorney General's responsibilities under the Immigration and Nationality Act to the federal courts. We reject this argument because our precedent has clearly established that the streamlining procedures are constitutional and that our review function remains the same whether or not the BIA undertakes a streamlined approach to appeals filed with the agency. Dia v. Ashcroft, 353 F.3d 228, 244 (3d. Cir.2003) (en banc). Therefore, there has been no impermissible transfer of administrative functions to the courts, and Paparizo's contention that the streamlining procedures are unconstitutional is without merit.

VI.

For the reasons discussed in this opinion, we will deny Paparizo's petitions for review of the agency's decisions.

7