

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2005

# Pranvoku v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1446

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Pranvoku v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1422.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1422

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-1446

ZAMIR PRANVOKU,
Petitioner

v.

ATTORNEY GENERAL USA,
Respondent

On Petition for Review of an Order of Removal from
the Board of Immigration Appeals

File No.: A79 299 340

Submitted Under Third Circuit LAR 34.1(a)
January 19, 2005

Before: ALITO, MCKEE, SMITH, Circuit Judges

(Opinion filed: March 29, 2005)

OPINION

McKee, Circuit Judge.

Zamir Pranvoku petitions for review of the Board of Immigration Appeals' order

affirming the decision of an Immigration Judge denying relief and ordering removal. For

the reasons that follow, we will affirm the ruling of the BIA.

# I.

Zamir Pranvoku is a citizen of Albania. In a hearing before the IJ, he testified that he participated in a peaceful demonstration in Albania in April, 1991, to protest the dictatorship and the outcome of recent elections. Pranvoku said that police raided the demonstration, killing four people, and that he and his brother were attacked as they tried to leave. After the demonstration, he went to his uncle's house for a week so the authorities would not find him.

The Democratic Party in Albania was in power from March of 1992 until March of 1997. Pranvoku became a member in June, 1993. According to Pranvoku's testimony, in June 1997, he participated in another anti-Socialist rally and was again attacked by the police. Thereafter, in March of 1999, employees of the Socialist government/secret police purportedly began pressuring his employer to fire him because of his membership in the Democratic Party. Pranvoku claimed that "Socialist bandits" accosted him and his father on the street in 1999, and told Pranvoku to end his association with the democratic party.

Finally, Pranvoku testified that someone threw a "molotov cocktail" into his home, starting a fire, in January 2000. Pranvoku left Albania on May 27, 2000. Following his arrival in the United States he received a Notice to Appear, charging him with being removable because he was in the United States without having been admitted or paroled. *See* INA § 212(a)(6)(A)(I), 8 U.S.C. § 1182 (a)(6)(A)(I). He thereafter applied for

2

asylum, withholding of removal, and relief under the Convention Against Torture, alleging persecution based on, inter alia, his political beliefs.

Pranvoku conceded removeability before the IJ and the IJ denied his applications for relief following an evidentiary hearing. The BIA affirmed in a separate decision, and this Petition for Review followed.

## II.

We have jurisdiction to review final orders of an administrative agency. 8 U.S.C. § 1252 (a)(1). In reviewing the final order of the BIA, administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion. *Dia v. Ashcroft*, 353 F.3d 228, 247-48 (3d Cir. 2003) *citing* 8 U.S.C. § 1252(b)(4)(B). We affirm the BIA's decision if it is supported by "substantial evidence." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.L.R.B. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). Our review of the BIA's application of legal principles is de novo.

## III.

To establish a claim for asylum or withholding of removal, an applicant must establish that he/she is a "refugee." 8 C.F.R. § 208.13(a). A "refugee" is defined as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is

3

> unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). An asylum applicant bears the burden of proving past persecution or a well founded fear of future persecution. 8 C.F.R. § 1208.13(a), *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001).

Past persecution requires a showing that one or more incidents rose to the level of persecution on account of one or more of the statutorily protected grounds. The persecution must have been committed by the government or by forces that the government was unable or unwilling to control. *Navas v. INS*, 217 F.3d 646, 655-56 (9th Cir. 2000). A well founded fear of future persecution requires a showing of a well founded fear, which is "supported by objective evidence that persecution is a reasonable possibility." *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001). INA § 208 gives the Attorney General *discretion* to grant asylum to a deportable alien who meets the definition of a refugee. 8 U.S.C. § 1158(a) (emphasis added).

## IV.

Pranvoku asserts that his due process rights were violated because he was not given the opportunity to supplement the record with testimony or an affidavit from his parents regarding his past persecution. Aliens facing removal are entitled to due process. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) citing *Sewak v. INS*, 900 F.2d 667,

4

671 (3d Cir. 1990). In immigration proceedings, that process includes: 1) factfinding based on a record produced before the decisionmaker and disclosed, 2) an opportunity to argue on his or her own behalf, and 3) the right to an individualized determination of his or her claims. *Id.*

Pranvoku alleges that he was not able to fully develop his case before the IJ or the BIA because he was not allowed to present oral testimony or an affidavit to corroborate his claim. However, the IJ did not bar Pranvoku from presenting favorable evidence. Rather, the record establishes that the IJ gave Pranvoku an adequate opportunity to explain why he did not provide additional evidence, and Pranvoku can not now blame the IJ for his failure to present sufficient evidence to carry his burden.

If an alien fails to present corroborating evidence under circumstances where it would have been reasonable to present it, "[t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Abdulai v. Ashcroft*, 239 F.3d 542. In *Abdulai* we suggested the following steps to assist in applying that rule: 1) identification of facts that should reasonably have been corroborated, 2) inquiry into whether the applicant has provided the corroboration; and if not, 3) whether there is an adequate explanation for the failure to do so." *Id.* at 544.

Pranvoku alleges that he did adequately explain the absence of corroboration. His brief asserts that he did not think to provide testimony because it would not have been permitted in Albania, and he argues that the IJ should not have penalized him for his

honest mistake. The IJ and the BIA thought that explanation was inadequate, and so do we.

The BIA laid out *Abdulai's* three part test and then applied it to Pranvoku's asylum application. First, the BIA found that it was reasonable for the IJ to have expected Pranvoku to provide testimony, or an affidavit that would have corroborated claims regarding "persecutory attacks" by the socialist party in Albania since his father was a witness to at least one of the incidents. That was a reasonable expectation because Pranvoku kept in touch with his parents after he left Albania, and they moved in with him when they came to the United States. In fact, they were living with him at the time of these immigration proceedings. The BIA also concluded that it was reasonable for Pranvoku to provide an affidavit from colleagues in the Democratic Party describing his persecution since they had already provided a letter describing his participation in the organization.

The BIA cited to pages in the transcript to show that Pranvoku did not offer an adequate explanation for his failure to have his parents testify on his behalf:

> Q. (Pranvoku's attorney) Sir, where are your parents today?
> A. They're at home in New Jersey.
> Q. (Judge) Did they know that you were having a hearing today?
> A. Yes.
> Q. Did you ask them to come testify?
> A. No I did not ask them.
> Q. You didn't ask them. Did you discuss that with your attorney?
> A. No.

Although the attorney may not have pursued the additional testimony because Pranvoku may not have told his attorney about it, oversight is not an "adequate" explanation for failing to provide corroborating evidence, especially since his parents were living with Pranvoku and readily available.

The BIA also cited to pages in the transcript relevant to Pranvoku's explanation for not providing an affidavit from his parents:

> A. (government attorney) Why doesn't he have any affidavits or letters from his parents in support of his claim?
> Q. I didn't discuss with the attorney if I needed that. I didn't know that I needed that.
> Q. (Judge) Well I realize that. You didn't mention to your attorney that they were here. But I mean your parents, your parents, if I remember correctly from your own testimony they are witnesses to at least two events. Right? So that seems to be very important. Did you not think about that?
> A. When I came here I never came just for myself. I didn't think my parents would be here as witnesses so I did not put them in my application.

Again, the explanation was inadequate and offers no explanation for why Pranvoku did not get an affidavit from his parents.

Pranvoku also asserts that the IJ's adverse credibility determination was improper because the IJ relied on his parents' missing testimony. However, even if we were to assume that Pranvoku *was* credible, we would still affirm the BIA because Pranvoku nevertheless failed to satisfy his burden of proof.

We explained in *Abdulai:* "Even if an alien is found to be credible, if there is no

context within which to evaluate her claim, she has failed to meet her burden of proof because she has not provided sufficient evidence of the foundation of her claim." 239 F.3d at 551, n. 6.

## V.

Since we find the BIA correctly applied the appropriate rule for reviewing Pranvoku's claim, we will affirm the BIA's decision affirming the IJ's denial of Pranvoku's applications for relief.