

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2005

# Veljovic v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2852

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Veljovic v. Atty Gen USA" (2005). *2005 Decisions.* Paper 127.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/127

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2852

———

NAIM VELJOVIC,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A77-637-210)

———

Argued November 15, 2005

Before: ROTH, FUENTES, and BECKER, Circuit Judges.

(Filed: December 12, 2005)

Sabri Gjoni (Argued)
Law Office of Sam Gjoni
401 Broadway, Suite 1111
New York, NY 10013

Attorney for Petitioner

John D. Williams (Argued)
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Attorney for Respondent

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge.

Naim Veljovic petitions for review of a decision by the Board of Immigration

Appeals ("BIA") reversing an Immigration Judge's ("IJ") grant of his application for

asylum and affirming the IJ's rejection of his application for withholding of removal and

protection under the Convention Against Torture ("CAT"). Because we find that there is

substantial evidence to support the BIA's decision and that Veljovic's due process rights

have not been violated, we deny the petition.

## I. Facts and Procedural History

Veljovic, who was born on September 11, 1980, is a native of the former

Yugoslavia and citizen of Serbia and Montenegro. Veljovic attempted to enter the United

States on April 26, 2000, but he was denied admission because he did not possess valid

travel documents. He eventually was paroled into the country pursuant to the Visa

Waiver Pilot Program and referred to an IJ for a hearing. At his appearance before the IJ,

2

Veljovic applied for asylum, withholding of removal, and protection under the Convention Against Torture.

At his merits hearing, Veljovic testified that he left Yugoslavia on April 22, 2000, because he did not want to comply with the country's policy of mandatory military service. Veljovic explained that he did not wish to serve in the army because, as an ethnic Albanian and a Muslim, he was afraid of being ordered to participate in massacres of Albanians that were taking place as part of the war in Kosovo.

Veljovic stated that he was first sent a military draft notice in September 1998. The mailman attempted to deliver the draft notice to him at his parents' house, but he refused to accept it. Because the notice went undelivered, Veljovic believed that the military police would come looking for him and that he would be jailed if he refused to serve in the military. As a result, Veljovic went into hiding at his uncle's house, which was in the same village as his parents' house, about half a kilometer away. Veljovic testified that he remained at his uncle's house for almost two years, during which time his parents brought him food and water and informed him that the mailman had attempted to deliver two additional draft notices to him at his parents' house.

Veljovic testified that he is afraid to return to Serbia and Montenegro because he believes he will be jailed for refusing to refusing to serve in the military. He acknowledged that the war in Kosovo has ended, that Slobodan Milosevic has been replaced by a new president, and that the government has offered a general amnesty to

3

individuals who, like Veljovic, evaded the draft. Nonetheless, Veljovic stated that he does not trust the government to comply with the amnesty law because the country is controlled by the same people who ruled with Milosevic. Veljovic predicted that, if he returns to Serbia and Montenegro, he will be faced with the same situation as when he left; in other words, he will be forced either to serve in the military and commit atrocities against Albanians or to go to jail.

On September 12, 2002, the IJ issued a decision finding that Veljovic was removable as charged, but granting him asylum on the basis of his well-founded fear of persecution. The IJ noted that Veljovic's reason for seeking asylum was more extreme than merely wanting to avoid military service; instead, it "involved the question of Yugoslavian military forces killing and harming and maiming innocent civilians in the area who did not necessarily put up any kind of resistance." (JA 22.) The IJ acknowledged the government's argument that conditions in the former Yugoslavia had changed and the amnesty law had been passed, but stated:

> The hostilities in Kosovo have only ended a few years ago. This is a very short space of time. This area of the world is very volatile in political nature. One cannot expect that American forces or the forces of these other nations will remain indefinitely in Kosovo to preserve the peace there. . . . [T]he opinion of the Court looking at the Country Reports on Human Rights Practices, reports from Amnesty International and other information that is of common knowledge to everyone, sees now that the only reason that there is peace in Kosovo is because there is a multi-national force there.

(JA 23-24.) The IJ then observed that upon returning to Serbia and Montenegro, Veljovic would probably be forced to serve in the military "and it's not unreasonable to believe

4

that during this period of time the multi-national force might leave Kosovo and [Veljovic's] situation would therefore then drastically change." (JA 24.) Thus, the IJ found that, although Veljovic was not persecuted prior to coming to the United States, "he would have a well-founded fear of persecution were he returned to his country at the present time." (JA 25.)

The Department of Justice appealed the IJ's grant of asylum to the Board of Immigration Appeals. On June 2, 2004, the BIA sustained the appeal and vacated the IJ's decision granting Veljovic asylum. Concerned with the IJ's speculation about what might happen to Veljovic if peacekeeping forces leave the region, the BIA explained:

> While we agree with the Immigration Judge that in some cases forced recruitment into the military during the serious problems in the former Yugoslavia's recent past may well be grounds for asylum in this country, we must also consider the dramatic changes that have taken place since [Veljovic's] original draft notice in 1998. Importantly, the government has changed, with former president Milosevic being put on trial, a relative peace has been established and a general amnesty has issued for those who had previously avoided the draft. We agree with the Immigration Judge that the area is not particularly stable and new conflicts might erupt. However, speculation of this type is not an appropriate basis for asylum in this country. And, in any event, it is well established that an asylum applicant's expression of fear of harm resulting from general conditions of violence and civil unrest in a home country, however compelling, does not constitute the demonstration of a well-founded fear of persecution within the meaning of the Act.

(JA 3-4 (internal citations omitted).) Thus, the BIA found that Veljovic had established neither past persecution nor a well-founded fear of future persecution, and it denied his application for asylum and withholding of removal. The BIA also denied Veljovic's

5

request for relief pursuant to the CAT.

## II. Discussion

Veljovic asserts essentially two arguments in support of his petition for review. First, he argues that the BIA's conclusion that he has no well-founded fear of persecution is not supported by substantial evidence.[1]  Second, he argues that the BIA denied him his right to due process when it reversed the IJ's grant of asylum without giving him an opportunity to present additional information in the form of testimony in order to rebut the BIA's conclusion.

We review the BIA's findings of fact under a substantial evidence standard.  See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).  The issue of whether the BIA violated Veljovic's due process rights is a legal question that we review de novo.  See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003).  We conclude that the BIA's decision is supported by the record and that Veljovic has not suffered a violation of his due process rights.

---

[1]In Veljovic's brief in support of his petition, he identifies four separate issues, three of which concern whether the BIA "abused its discretion" by vacating the IJ's ruling without providing an opportunity to supplement the administrative record.  Because it is well settled that determinations that an alien experienced "persecution" or has a "well-founded fear of persecution" are findings of fact and are thus reviewed under the substantial evidence standard, see Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001), we will construe Veljovic's arguments that the BIA abused its discretion as an argument that the BIA's decision is not supported by substantial evidence.

A.     Denial of Asylum, Withholding of Removal, and CAT Relief

Veljovic argues that he satisfied the statutory requirements for asylum to the extent

that he established a well-founded fear of persecution.[2]  Veljovic contends that his fear is

well-founded because, even though Milosevic is jailed and on trial, the government and

military institutions in Serbia and Montenegro remain controlled by individuals loyal to

Milosevic and his policies.  Without any citations to the administrative record,[3] Veljovic

further argues that even though the war in Kosovo is over, hatred towards ethnic

Albanians has increased because they are blamed for the NATO bombings that took place

in the late 1990s.  According to Veljovic, Serbian nationalism is on the rise and only the

presence of NATO troops keeps Serbians from acting on their hatred of Albanians.

Veljovic also notes that even with the presence of the multi-national military force,

clashes between the Serbian government and Albanian civilians resulted in 19 civilian

---

[2]In his petition, Veljovic does not discuss the BIA's finding that he has not
suffered past persecution, which, in any event, is supported by substantial evidence.
Veljovic was not beaten or arrested as a result of his failure to respond to the draft
notices, nor did anyone come looking for him after he sought to evade the draft by hiding
in a different house in his village.

[3]Veljovic makes a number of factual allegations and arguments that are not
supported by citations to the administrative record.  In Berishaj v. Ashcroft, we held that
"courts reviewing the determination of an administrative agency must approve or reject
the agency's action purely on the basis of the reasons offered by, and the record compiled
before, the agency itself."  378 F.3d 314, 330 (3d Cir. 2004) (citing SEC v. Chenery
Corp., 318 U.S. 80 (1943)).  Veljovic could have filed a motion to reopen proceedings
with the BIA based on changed country conditions, see 8 U.S.C. § 1229a(c)(7)(C)(ii); 8
C.F.R. § 1003.2(c)(3)(ii), but he did not.  Accordingly, our review of the BIA's decision
is limited to the administrative record.

7

deaths in March 2004.

With respect to the amnesty law discussed in the BIA's decision, Veljovic contends that "[t]he fact that Serbia and Montenegro adopted the amnesty law does not mean anything." (Pet. Br. at 15.) Veljovic explains that "[a]mnesty is not guaranteed or respected. . . . Draft evaders have never been treated kindly and can expect little official protection." (Pet. Br. at 17.) For example, without citing to the record, Veljovic states that if he is redrafted he would not be permitted to carry weapons, he would be given the most menial tasks, and he would often be the first sent into harm's way. He also states that if he survives his military service, "reintegration into traditional society will be difficult." (Pet. Br. at 17.) More generally, Veljovic points out, again without citing to the record, that Yugoslavia has a history of not abiding by its democratic constitution, and that in 1995 the Serbian military killed a group of Bosnians after guaranteeing them safe passage.

Turning to the BIA's decision, its reversal of the IJ's grant of asylum is supported by substantial evidence. The administrative record—which contains, inter alia, U.S. Department of State Country Reports on Human Rights Practices in Yugoslavia for 1999, 2000, and 2001—indicates that the war in Kosovo has ended, a relative peace has been established, former president Milosevic was placed on trial, and a new president was

8

elected to lead the new government.[4] The record further states that the new government has offered a general amnesty to individuals who, like Veljovic, evaded the military draft. Veljovic contends that the conditions in Serbia and Montenegro are far worse than the record reflects, but, as noted above, he has failed to make a record to support his claims, despite the opportunity to do so. With respect to his fear of serving in the military upon his return to Serbia and Montenegro, we have explained that it is "generally accepted 'that a sovereign nation enjoys the right to enforce its laws of conscription, and that penalties for evasion are not considered persecution.'" Lukwago v. Ashcroft, 329 F.3d 157, 168-69 (3d Cir. 2003) (quoting M.A. v. INS, 899 F.2d 304, 312 (4th Cir. 1990) (en banc)). Accordingly, Veljovic has failed to introduce evidence into the administrative record to show that "no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 484 (1992). In addition, for reasons similar to those described above, Veljovic's petition for review of his application for withholding of removal and relief under the CAT is denied.

B. Due Process Violation

Veljovic next argues that his due process rights were violated because the BIA

---

[4]With respect to whether the administrative record accurately reflects current conditions in Serbia and Montenegro, the Department of Justice asserted at oral argument that it followed the screening policy set forth in the appendix of this Court's decision in Ambartsoumian v. Ashcroft, 388 F.3d 85, 94-96 (3d Cir. 2004), and determined that conditions have not changed significantly enough to require a remand. Based on the evidence and arguments presented by both parties, we agree.

raised the issue of changed country conditions in Serbia and Montenegro without affording him an opportunity to explain how those changed conditions affect his asylum claim. Specifically, Veljovic contends that the fact that the changed conditions in Serbia and Montenegro have changed since he left the region do not negate the widespread and deeply rooted animus towards ethnic Albanians.

Aliens facing removal are entitled to due process. Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (citing Sewak v. INS, 900 F.2d 667, 671 (3d Cir. 1990)). In immigration proceedings, an alien is entitled to: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) an opportunity to argue on his or her own behalf; and (3) the right to an individualized determination of his or her claims. Id.

The BIA did not violate Veljovic's due process rights when it reversed the IJ's grant of asylum without remanding his application to the IJ. Whether Veljovic had a well-founded fear of persecution was a central element of Veljovic's hearing before the IJ. Veljovic was able to develop the record and make arguments supporting his application for relief. He testified on direct and cross-examination about his knowledge of current conditions in Serbia and Montenegro and why he was afraid to return. Furthermore, Veljovic had the opportunity to move to reopen the proceedings in order to supplement the record with additional evidence pertaining to conditions in Serbia and Montenegro but did not do so. In reversing the IJ's grant of asylum, the BIA reviewed

10

the evidence in the record and concluded that Veljovic's fear of persecution was not well-founded.  Accordingly, the BIA's decision did not violate Veljovic's due process rights.

### III.  Conclusion

For the foregoing reasons, we will deny Veljovic's petition for review.